## Joseph J. Morris, Defendant in Error, v. Saline County Coal Company, Plaintiff in Error.

1. MINES AND MINERALS, § 22*—*when second lease not deemed continuation of first lease.* Where the owner of land gives a lease for coal mining purposes under which the lessee is not to be liable for surface subsidence, and the lease is assigned to a mining company, and, after conveyance of the surface, reserving mining rights, a second similar lease is given to the mining company and the mine is operated under the second lease and the first lease canceled, it cannot be deemed that the making of the second lease was a continuance of the first lease.

2. NOTICE, § 14*—*what is effect of possession by contract purchaser.* Possession by a contract purchaser of the surface of land, the mining rights having been reserved, is notice to the world of whatever right he has in the premises.

3. MINES AND MINERALS, § 58*—*what are rights of purchaser of land with notice of right of mining coal as to surface support.* One who purchases land with the knowledge that the right to mine and remove coal has been reserved has the right to assume that the coal will be mined and removed in a lawful manner and that sufficient coal or supports will be left to support the surface.

4. MINES AND MINERALS, § 9*—*acquirement of title to coal under land.* The coal underlying land may be acquired by title absolutely in fee in one person while the right to the surface is in another.

5. MINES AND MINERALS, § 58*—*duty of owner of mining rights to sustain surface of land with sufficient supports.* The only distinction as to the respective rights of the owner of the surface of land and the owner of mining rights rests on the principle that the servient estate owes the servitude of affording sufficient supports to sustain the surface.

6. MINES AND MINERALS, § 60*—*when burden is on mine operator to show subsidence of surface is due to buildings.* The act of removal of superincumbent soil by a mine operator is prima facie the cause of its subsequent subsidence, and if the subsiding is, in fact, due to the weight of buildings erected thereon, then the burden is on the mine operator to so show, in an action by the owner of the surface against a lessee of mineral rights for damages for subsidence of the surface.

7. MINES AND MINERALS, § 60*—*when damage done by subsidence up to time of commencement of suit may be shown by owner of

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

*surface.* In an action by the owner of the surface of land against the lessee of mining rights to recover damages for injury due to subsidence of the surface, plaintiff may show the damage done to his property from the time of the first subsidence up to the time of the commencement of suit, since successive suits for actual damages may be brought from time to time as the damages are sustained, and in each suit the party may recover the damages he has sustained prior to its commencement, not barred by a previous recovery.

Error to the Circuit Court of Saline county; the Hon. A. W. LEWIS, Judge, presiding. Heard in this court at the October term, 1917. Affirmed. Opinion filed July 16, 1918. *Certiorari* denied by Supreme Court (making opinion final).

WHITLEY & COMBE, for plaintiff in error; WARREN NICHOLS, of counsel.

W. C. KANE and A. E. SOMERS, for defendant in error.

MR. JUSTICE McBRIDE delivered the opinion of the court.

The defendant in error, hereinafter called defendant, recovered a judgment against the plaintiff in error, hereinafter called plaintiff, in the Circuit Court of Saline county at the September term, 1916, for the amount of $5,950, to reverse which the plaintiff prosecutes this writ of error.

It appears from the record in this case that on and prior to December 14, 1906, John J. Parish was the owner of the southwest quarter of the southwest quarter of Section 16, and a portion of the southeast quarter of the southeast quarter of Section 17, all in Township 9 south, Range 6 east of the third principal meridian, in Saline county, Illinois, which was afterwards platted and subdivided into lots and blocks in the manner set forth in plaintiff's declaration. On December 14, 1906, John J. Parish gave a lease or contract for the right to mine and remove the coal underlying said lands to Samuel W. McCune, which lease

provided for the payment of a stipulated amount per ton for the coal removed and contained a clause which is stipulated therein as rent for the privilege granted, and also provided that the lessee should not be liable for surface subsidence, in words as follows: "Without any liability for surface subsidence by mining out the coal, or for not leaving pillars or artificial supports under the land." This lease was never recorded and the coal lands were never taken possession of by the lessee under said lease. In May, 1907, Samuel W. McCune, the lessee above named, assigned the foregoing lease to the plaintiff. By deed dated July 9, 1907, acknowledged July 15, 1907, and recorded July 27, 1907, Parish and his wife conveyed to E. E. Denison the surface of the tract of land above described, reserving the right to mine and remove the coal thereunder. On July 27, 1907, E. E. Denison conveyed the above-described lands back to Parish as trustee, "to be held in trust for the use of E. E. Denison, John Shaw, R. S. Marsh, F. B. Miller, W. R. Smith and John J. Parish, giving unto said trustee full power to survey, subdivide, plat, sell and convey by lots and blocks all the interest, right and title of the above-named beneficiaries in the land described herein." This deed also reserves the right to mine and remove the coal under said lands, and both of these deeds were duly recorded in the recorder's office on July 27, 1907. At the same time there was recorded in the recorder's office a plat of an addition to West Harrisburg, and being a plat of lots, blocks and streets of the lands above described, together with a certificate of the surveyor and a map thereof. On the same day, July 27, 1907, John J. Parish as such trustee entered into an agreement with the defendant Joseph J. Morris to sell and convey to him Lots 1, 2, 13 and 14 in Block 9; Lots 9, 10, 11 and 12 in Block 10; Lots 4 and 5 in Block 15; Lots 1 and 2 in Block 16; all in West Harrisburg Addition, and being a part of the lands above described and

platted. Morris at that time paid a portion of the purchase price and on that day took possession of the above-described lots and, as he says, immediately began the erection of houses thereon, and by December 1, 1907, had erected and completed five dwelling houses upon said property. The contract executed to Morris was not recorded, but after the full payment for said lots and on March 29, 1913, John J. Parish, as such trustee, for a consideration of $4,200 conveyed said lots to J. J. Morris, which deed was duly recorded on April 22, 1913. The contract and deed to Morris reserved the coal underlying said lands with the right to mine and remove the coal therefrom.

On August 30, 1907, John J. Parish and Anna, his wife, made and executed to the plaintiff, Saline County Coal Company, a lease or contract giving to said company the right to mine and remove the coal underlying said lands at a stipulated price of three cents per ton, and it was provided in said lease that the lessee should have the "right and privilege to excavate, mine, take out and remove all of the coal from or on said premises without any liability for surface subsidence occasioned thereby." This lease also provided the right to use certain parts of the surface of the land for the purpose of erecting shafts or other structures to be used in and about the hoisting of coal. It is also provided in said lease: "It is hereby further understood and agreed that upon the execution of this lease that a certain lease, executed under date of December 14, 1906, between the first parties hereto and Samuel W. McCune, subsequently assigned by said Samuel W. McCune to the Saline County Coal Company, shall become null and void." This lease was recorded on the 27th of February, 1908. It further appears that the Saline County Coal Company erected a shaft and prior to October 15, 1915, mined and removed the coal underlying the lots above described. That in removing the coal the rooms were turned upon a 45-foot center and

between 27 and 30 feet of the coal was removed. Witnesses testified that two-thirds of the coal had been removed therefrom and that the pillars were crushed and the roof had come down and the passageway closed, and that the pillars in some places were 50 feet apart and the width of the pillars varied from nothing to 30 or 40 feet, and that the removal of the coal from beneath the lots in question in the manner above specified caused the subsidence of the surface of said lots. The surface of the lots above described had their principal subsidence on October 15 or 16, 1915, and thereafter settled more. There were five four-roomed houses on the lots, five outhouses, coalhouses and closets, four drilled wells, four cisterns and three barns, summer kitchens and concrete and other walks. The houses were frame buildings with brick foundations and had been built about 7 years.

The declaration contained two counts, the first charging a negligent removal of the coal and the careless and wrongful neglect and failure to leave sufficient subjacent props thereunder. The second count charged the removal of the coal and the failure to leave sufficient props to permanently maintain and support the surface of said lots in their natural position.

The first contention of plaintiff is that as the lease to McCune dated December 14, 1906, was assigned to plaintiff and as a new lease was made by Parish to plaintiff purporting to have been executed on August 30, 1907, and recorded February 27, 1908, and that although the first lease was by the lessee McCune assigned to plaintiff and was by the plaintiff and Parish by their written agreement declared canceled and null and void by a second lease entered into on August 30, 1907, by and between the plaintiff and Parish, that this in effect continued the first lease, and that the first lease was effectual as to parties purchasing the surface of the land after the making of the first lease

and prior to the making of the second lease. We do not believe that the making of the second lease was a continuance of the first in view of the evidence that the mine was operated under the second lease and not under the first, and that the first lease had been canceled. Even if it were to be so considered, it will be observed that after the making of the lease to McCune, which was not of record, and no possession taken under it and nothing done thereunder towards the removal of coal, Parish and his wife conveyed the land in question to E. E. Denison, reserving the right to mine and remove the coal, and that thereafter E. E. Denison conveyed the land to John J. Parish as trustee for the use of Denison and others as above named, which deed also reserved the right to mine and remove the coal. The terms of the trust were that the trustee was empowered to survey, subdivide, plat, sell and convey by lots and blocks all the interest of the said beneficiaries, therein reserving the coal. On the same day, July 27, 1907, John J. Parish as such trustee entered into a contract of sale with Morris, the defendant, for the sale of the lots in question. Payments were then made upon the lots and Morris entered into possession of the lots on that day, made improvements upon these lots and completed five houses thereon by December 1, 1907. The lease to plaintiff, called herein the second lease, was not recorded until February 27, 1908, and so far as the record discloses the defendant Morris had no notice that a lease of any kind had been made of the coal right at the time he purchased the lots, and all that the record disclosed to him was that the coal under his lots had been reserved with the right to mine and remove the same. Up to the time of recording the second lease and at the time defendant went into possession of the lots there was nothing of record showing that the plaintiff or any one else had acquired the right to remove the coal under the surface of said premises without any liability for surface

subsidence occasioned thereby. The claim of plaintiff
is that it had the right to mine and remove this coal
without any liability for surface subsidence. It is
true that the defendant was in possession under a con-
tract of purchase and some payments had been made
and improvements begun, and, as we view it, he was
entitled to the same protection under a contract as un-
der a deed, if he was in possession. It could make no
difference to the plaintiff whether the possession was
under a deed or contract of purchase, or whether all
of the purchase price had been paid or not, that was
a matter between the vendor and the defendant in
which plaintiff had no interest. Possession by defend-
ant was notice to the world of whatever right he had
in the premises. *Redden v. Miller,* 95 Ill. 336; *Craw-
ford v. Chicago, B. & Q. R. Co.,* 112 Ill. 314.

What were the rights of the defendant? He had
purchased the lots with notice that the right to mine
and remove the coal had been reserved. He had the
right to assume that the coal would be mined and re-
moved in a lawful manner and that sufficient coal or
supports would be left to support the surface. ''Where
the surface of land belongs to one and the minerals to
another, no evidence of title appearing to regulate or
qualify their rights of enjoyment, the owner of the
minerals cannot remove them without leaving support
sufficient to maintain the surface in its natural state.''
*Wilms v. Jess,* 94 Ill. 464, and authorities there cited;
*Catlin Coal Co. v. Lloyd,* 109 Ill. App. 122.

The coal underlying the land may be acquired by
title absolutely in fee in one person whilst the right to
the surface is in another. They may be held by sep-
arate and distinct titles in severalty. ''The only dis-
tinction as to the respective rights rests on the princi-
ple that the servient estate owes the servitude of af-
fording sufficient supports to sustain the surface.''
*Ames v. Ames,* 160 Ill. 599. Whatever effect may be
given to the clause in the lease, wherein it is provided

that the plaintiff may take out and remove all the coal from said premises, "without any liability for surface subsidence occasioned thereby," as to John J. Parish, the lessor, it certainly does not deprive the defendant of his right to support of the surface in the manner provided by law. It follows from what we have said that the leases above referred to were no defense as to a suit instituted by the defendant to recover damages for failure to support the surface of his lots, and the court did not err in refusing to admit them in evidence.

It is next contended that there is not a scintilla of evidence tending to prove that the subsidence complained of would have taken place had the premises in question been in their natural condition.

The evidence shows that about two-thirds of the coal had been removed by the plaintiff; that in many places the pillars were almost entirely gone and in others that they were crushed and that the roof had come down both in the rooms and in the entries; that the pillars or supports were very irregular and that the surface subsided because of the removal of the coal. The plaintiff claims that it was essential to the making of a prima facie case for the defendant that there be affirmative evidence to prove that by reason of the manner by which the coal was mined the land would have subsided had it been in its natural state, without any buildings or added weight upon it. There is no evidence in this case to show that the presence of the buildings in any manner hastened the falling of the surface of the ground. It simply appears that there were buildings upon the lots and that the coal was removed and the subsidence took place. We do not understand that it was the duty of the defendant to prove that the presence of the buildings did not contribute to the subsidence. The Supreme Court of Illinois has said approvingly, in quoting from Wood on Nuisances: " 'The mere presence of a building or other structure upon the surface does not prevent a recovery for in-

juries to the surface, unless it is shown that the subsidence would not have occurred except for the presence of the buildings. Where the injury would have resulted from the act if no buildings existed upon the surface, the act creating the subsidence is wrongful and renders the owners of the mines liable for all damages that result therefrom, as well to the buildings as to the land itself.' * * * The act of removing all support from the superincumbent soil is prima facie the cause of its subsequently subsiding, but if the subsiding is, in fact, caused by the weight of buildings erected subsequent to the execution of the lease of the mine, this is in the nature of contributive negligence, and may be proved in defense. The authorities do not require that plaintiff's proof shall exclude that hypothesis in the first instance." *Wilms v. Jess, supra.* The same doctrine was announced by this court in the case of *Donk Bros. Coal & Coke Co. v. Novero,* 135 Ill. App. 633. If the erection of the buildings upon the lots in fact contributed materially or otherwise to the decadence of the surface then the duty was cast upon the plaintiff to so show, and there is no evidence in this record to that effect.

It is next contended that the court erred in the giving of defendant's fifth, seventh and eighth instructions and in the admission of evidence of the value of the lots in question at the time of suit and in refusing plaintiffs ninth, twelfth, thirteenth, fourteenth, fifteenth and sixteenth instructions, which announced an opposite principle to those announced in defendant's given instructions. We think it was perfectly proper for the defendant to show the damages done to his property from the time of the first subsidence up to the time of the commencement of the suit. Successive suits for actual damages may be brought from time to time as the damages are sustained and in each suit the party may recover such damages as he has sustained prior to its commencement, not barred by a

previous recovery. *McConnel v. Kibbe,* 33 Ill. 175. And the same doctrine is announced in the case of *Catlin Coal Co. v. Lloyd,* 109 Ill. App. 122.

It is insisted by plaintiff that the defendant should have taken means to have removed this property and reduced the amount of damages. We do not find any evidence in this record, and none has been pointed out, that anything could have been done by defendant to have prevented the continuation of the damages.

We are not able to say that the court erred in giving the instructions criticized upon behalf of the defendant and in refusing those offered and referred to on behalf of plaintiff.

It is next insisted that the court erred in giving defendant's first instruction. Counsel say: "This was a peremptory instruction to find for the plaintiff and to take from the jury all questions except the question of damages." It is true that this instruction did direct the jury to find a verdict for the plaintiff, and in view of the record in this case we do not see how the court could have done otherwise. The only defense that was offered by the plaintiff was that it had leases giving it the right to mine and remove the coal without being liable for surface subsidence but, as we have above decided, while the leases may have been good as against the lessor (whether they were or not we are not determining) they were certainly not good against a purchaser who was in possession of the lots at the time that the lease was entered into and at and before the time the leases were placed upon record.

We are unable to say that any reversible error was committed by the court in the trial of this case, or that the verdict is unjust or manifestly against the weight of the evidence, and the judgment of the lower court is affirmed.

*Judgment affirmed.*