Fred W. Wanless, Appellee, v. Peabody Coal Company, Appellant.

Gen. No. 9,060.

Opinion filed January 17, 1938.  Rehearing denied April 5, 1938.

PROVINE & WILLIAMS, of Taylorville, and CLARK H. MILEY, of Springfield, for appellant.

DOYLE, SAMPSON & GIFFIN and GIFFIN, LINDNER, NEWKIRK & JONES, of Springfield, and PAUL F. WANLESS, for

appellee; C. Terry Lindner and Alfred F. Newkirk, both of Springfield, of counsel.

Mr. Justice Davis delivered the opinion of the court.

This is an appeal from a judgment recovered by plaintiff appellee, Fred W. Wanless, against defendant appellant, Peabody Coal Company, in the circuit court of Sangamon county, said suit having been commenced by the issuance of a summons and filing of a complaint by plaintiff on April 3, 1935.

The original complaint consisted of one count. The court granted plaintiff leave to file an amended complaint consisting of one count, in which he alleged that on December 31, 1917, and since said date, he has been the owner of 160 acres of land, and that, from June 22, 1926, the defendant has been possessed of a certain coal mine, known as mine no. 57, in Sangamon county, Illinois, and was possessed of the coal underlying the land of plaintiff; that the defendant dug and removed coal from under the premises of plaintiff in such manner as that sufficient support was not left to maintain the lands of plaintiff in their natural position, and that, by reason thereof, certain portions of the surface of said land subsided and the plaintiff was damaged.

A motion to dismiss the amended complaint, supported by affidavit, was filed by the defendant, to which plaintiff filed suggestions in opposition thereto and the court, upon a hearing, denied the motion to dismiss and ruled the defendant to answer. The answer of defendant admitted the ownership of the lands by plaintiff except the underlying coal, but denied it had been in possession of the mine since June 22, 1926; it admitted the operation of the mine and denied the material allegations of the amended complaint and that plaintiff was entitled to recover any damages, and prayed a judgment in bar.

The case was called for trial and a jury selected and sworn to try the same. During the course of the trial

leave was given plaintiff to file a second count to the amended complaint. In this second count plaintiff alleged that about May 1, 1928, six Illinois corporations, known as the Peabody Coal Company, Industrial Coal Company, Midland Counties Coal Company, Southern Counties Coal Company, Merchants Metropolitan Coal Company and Big Muddy Coal Company, called the "constituent corporations," merged or consolidated into a new corporation under the name of Peabody Coal Company, and that from June 22, 1926, until May 1, 1928, the original Peabody Coal Company was possessed of and using and operating a coal mine, known as Peabody Mine No. 57, and since May 1, 1928, defendant has operated the same. That the original Peabody Coal Company and the defendant (Peabody Coal Company) have mined and removed the coal from under the lands of plaintiff to such an extent and in such manner that sufficient support was not left under the land; but plaintiff is unable to state what part of the coal was mined and removed from under his land by the original Peabody Coal Company and what part by the defendant. That by reason thereof the surface of the lands was caused to subside and plaintiff was damaged. The answer of the defendant to the complaint as amended denied the allegations thereof and denied that plaintiff was entitled to any relief or recovery.

A motion by defendant for a directed verdict, made at the close of defendant's case, was denied by the court and a similar motion at the close of all of the evidence was denied. The jury returned a verdict in favor of plaintiff, assessing his damages at $18,227. Defendant filed a motion for a new trial and also moved the court for a judgment in its favor and in bar of plaintiff's action, notwithstanding the verdict of the jury, which motions were overruled by the court. The court thereupon rendered judgment upon the verdict of the jury and this appeal followed.

During the progress of the trial and after the second count was filed to the amended complaint, the circuit court granted plaintiff leave to amend his amended complaint by excluding by interlineation from the description of the lands therein described that part of the tract lying to the north and east of the Rochester hard road, being State bond issue route 24.

The case finally went to the jury on the amended complaint of plaintiff and second count thereof and the complaint as amended, alleging damages to approximately 110 acres of land, caused by the original Peabody Coal Company and the consolidated company, Peabody Coal Company, defendant, removing coal underlying the same in such manner as that sufficient support was not left to maintain the lands of plaintiff in their natural position and by reason thereof certain portions of the surface of said lands subsided and upon the answers of the defendant to said amended complaint and second count thereof as amended.

Appellant insists that the court erred in holding that the statute of limitations began to run from the time the subsidence occurred and not from the time of the removal of the coal. This question arose upon the motion of plaintiff to strike a part of the answer of defendant to the first count of the amended complaint, wherein it is alleged that no coal had been mined from under the lands of appellee during the five years preceding the filing of the suit, which motion was granted by the court. The court also instructed the jury that the statute began to run from the time of the occurrence of the subsidence and not, as contended by appellee, from the time of the removal of the coal.

Counsel for appellant states that, in discussing the issues of the case, they have assumed that the statute of limitations begins to run from the time there is a change in the condition of the surface, which is admitted by them to be in accordance with the rule announced in *Morris v. Saline County Coal Co.*, 211 Ill.

App. 178; *Donk Bros. Coal & Coke Co. v. Slata,* 133 Ill. App. 280; *Treece v. Southern Gem Coal Corp.,* 245 Ill. App. 113. And further say that the point involved does not appear to have been passed upon by the Supreme Court of this State, but that the better rule, on principle, would appear to be that the statute begins to run from the time of the removal of the coal. This question is settled by the cases cited by appellant, and the trial court did not err in holding that the statute of limitations began to run from the time a change in the condition of the surface of the land took place.

Appellant also insists that the second count of the amended complaint filed, by leave of court on June 3, 1936, states a new cause of action and that the statute of limitations should commence to run on June 3, 1931, instead of April 3, 1930. The second count of the amended complaint alleges the merger or consolidation of six corporations into a new corporation under the name of Peabody Coal Company, and that the coal had been removed by the original Peabody Coal Company and by the consolidated company, Peabody Coal Company, defendant. That, as a result of such removal, the subsidences had occurred within five years prior to the bringing of the suit. A motion was made to dismiss the second count of the complaint because the action sued on did not accrue within five years. The court overruled the motion.

A statute in force in this State at the time of the merger or consolidation of these corporations provided: That all rights of creditors shall be preserved unimpaired, and all liabilities and duties of the respective corporations shall attach to such single corporation and may be enforced against it to the same extent as if such liabilities and duties had been incurred and contracted by it, and that any action pending against one of the corporations, merged or consolidated, may be prosecuted to judgment as if consolidation had not taken place, or the merged or consolidated corporation

may be substituted in its place. Callaghan's Ill. St. Ann. ch. 32, ¶ 71. Under the provisions of this statute plaintiff could recover against Peabody Coal Company any damages sustained by reason of the negligent act of either of the respective merging corporations within the five years previous thereto.

Sec. 46 of the Civil Practice Act [Ill. Rev. Stat. 1937, ch. 110, § 170; Jones Ill. Stats. Ann. 104.046], provides that if the time prescribed or limited for the bringing of an action had not expired when the original pleading was filed, and if it shall appear from the original and amended pleadings that the cause of action asserted in the amended pleading grew out of the same transaction or occurrence set up in the original pleading, even though the original pleading was defective in that it failed to allege the performance of some act or the existence of some fact or some other matter, which is a necessary condition precedent to the right of recovery, when such condition precedent has in fact been performed, the cause of action shall not be barred by lapse of time, and for the purpose of preserving such cause of action any such amendment shall be held to relate back to the date of the filing of the original pleading so amended. A plaintiff is at liberty to state his cause of action in one or more counts and recovery may be had if he proves one or more of the counts.

The amended complaint alleges that defendant, Peabody Coal Company, negligently removed the coal from under the lands of plaintiff and thereby caused the damages. The second count of the amended complaint alleges the consolidation of the six corporations under the name of Peabody Coal Company and that the original Peabody Coal Company and Peabody Coal Company, defendant herein, negligently removed the coal and thereby caused the damages complained of. In 1929 sec. 39 of the Practice Act of 1907 was amended by adding a paragraph somewhat similar to sec. 46 (2)

of the Civil Practice Act. Under the provisions of said section the cause of action in the amended pleading must not only grow out of the same transaction or occurrence, but it must be substantially the same as set up in the original pleading.

It is said by McCaskill, in the 1936 Supplement to Illinois Civil Practice Act Annotated, page 126, that:

"Section 46 of the Civil Practice Act has not only made some important changes in the language of a particular section, but it is given a new setting. It is no longer incumbered with the traditions of common-law pleading and practice, but is a part of a revised system of procedure designed to subordinate form to substance. Principles of old procedure are retained only when they further justice. Only to the extent they are persuasive have former decisions any effect. With this different approach there should be no difficulty in announcing the true meaning of the section, for its language is clear."

There is no requirement that the original pleading state a cause of action. It must disclose a transaction or occurrence, and the same transaction or occurrence disclosed by the amended complaint. The cause of action asserted in the second count grew out of the same transaction or occurrence set up in the original pleading. It covered the same period of time, and the removal of the coal underlying plaintiff's lands in such manner as that sufficient support was not left to maintain the lands of plaintiff in their natural position, and for that reason certain portions of the surface thereof subsided was the negligence charged in each count of the amended complaint. The only difference is as to the statement of liability of defendant, the first count of the amended complaint alleging that Peabody Coal Company, defendant, negligently removed coal and was liable therefor, and the second count of the amended complaint alleging that the original Peabody Coal

Company and Peabody Coal Company, defendant, negligently removed coal and that Peabody Coal Company, defendant, was liable therefor.

Both the amended complaint and the second count thereof set out causes of action good as against motions to dismiss in the nature of demurrers, but the liability of defendant was stated differently in the two counts. There is no question but that both could be joined in one complaint if done before the running of the statute. They are not separate causes of action because a judgment on either count would bar recovery on the other. Both are pleaded to avoid a variance on the trial, but they are different statements of the same cause of action. In form they are separate liabilities, but in fact they represent a single liability of the defendant. We are of opinion that the court did not err in not restricting the evidence to changes in the surface of the land after June 3, 1931, as contended for by appellant.

Appellant makes the claim that there is no competent evidence in the record as to the extent of plaintiff's damages for the reason that plaintiff's witnesses, in fixing the amount of his damages, considered speculative and improper elements, and that all evidence as to the amount of damages was based upon the erroneous assumption that the depressions appeared after April 3, 1930, that plaintiff sought to establish the amount of his damages by a comparison between the fair cash market value of the land in two conditions. In the first condition it was assumed that there was on the land, on April 3, 1935, one subsidence only, depression 2, plaintiff's exhibit, and the witnesses expressed their opinions as to the value of the land. They were then asked to assume the second condition, viz.: that, as of the same date, four depressions, nos. 1, 2, 3 and 4, plaintiff's exhibit, were on the land and the witnesses expressed their opinions as to the value of the land

in that condition, and the difference between the two figures represented the depreciation in value of the land, due to the additional depressions.

We have considered the testimony of the witnesses for plaintiff on the question of values and find that not one of the witnesses considered fear of future subsidences or speculative and improper elements of damages in arriving at their opinion as to values. The opinion of each witness was based upon the experience of the witness as to the value of lands of like character as those involved in this suit. Several witnesses, all of whom resided in and around the vicinity of the land in question, among whom were persons having long experience in the real estate and farm loan business and who were familiar with land values in Sangamon county, and who had experience with land from which coal had been removed and who knew the lands in question, gave their opinions as to the amount of damages, based upon their experience with lands of the character of those involved in this suit.

To questions propounded on cross-examination some of the witnesses testified that certain elements of damage, which were speculative and improper elements to be taken into consideration in fixing damages and which were suggested by the examiner, would affect the value of the lands, but their opinion was based upon their experience in selling and dealing with this character of land and not upon speculative and improper elements of damage. All of the elements of damage testified to on cross-examination, that was speculative or improper, were called out by the questions of counsel on cross-examination and none of the witnesses were interrogated as to what elements of damage were considered by the witness in making up his opinion as to values, but questions suggesting improper and speculative elements of damage were asked the witnesses, and they were led to admit that there

existed other elements of damage which were specultive and improper to be taken into consideration in fixing values.

Defendant moved the court to strike all portions of the evidence of the witnesses as to the amount of damage testified to because it developed upon cross-examination that each of the witnesses had, in arriving at his opinion, applied an erroneous standard and taken into consideration elements barred by the law in subsidence cases, which motion was denied by the court. The circuit court did not err in refusing to strike the testimony of the witnesses as to the amount of damage testified to by them.

Whether the evidence of plaintiff as to the amount of damages was based upon the erroneous assumption that the depressions appeared after April 3, 1930, as contended by plaintiff, depends upon whether from the greater weight of the evidence it was proven that the depressions appeared before or after April 3, 1930. There is in the record evidence that on April 3, 1930, only one depression was on the land and the plaintiff could, in the questions to the witnesses in calling for their opinions as to value, assume that only one subsidence was on the land on April 3, 1930.

Appellant further contends that all four depressions were in existence prior to April 3, 1930, and that during the five-year period thereafter there was no change in their size, shape or depth, and for this reason the trial court should have directed a verdict for the defendant; the verdict is not supported by the evidence; the valuation evidence offered by plaintiff was wrong in premise, and should have been excluded upon defendant's motions; the exhibits offered by plaintiff were not admissible; the verdict was excessive; and the court committed error in the giving and refusing of instructions.

Ray V. Tilly, a civil engineer, testified that he made three surveys of the land in 1935. He reproduced the

notes taken on these surveys on plaintiff's exhibit 14, a contour plat showing elevations, and that plaintiff's exhibit 15 was drawn to show the general locations of the depressions on the land, which are indicated on the exhibit as sinks nos. 1, 2, 3 and 4.

Several witnesses testified on behalf of plaintiff as to the time of the occurrence of the several depressions. One a tenant on the farm for 36 years and farm hands who had worked on the place for quite a number of years besides Fred Wanless and his brother, Charles. It was agreed by all the witnesses that the first subsidence, sink no. 2, occurred in 1929. That sink no. 1 next appeared, in the year 1931, as late as May or June or later, and that no subsidence took place in the year 1930; that sink no. 3, in the fall of 1931 or in 1932, and all agreed that sink no. 4 appeared in 1935.

The deposition of George C. McFadden who, until 1936, was assistant vice-president of defendant in charge of operations was read. He identified defendant's offered exhibits, numbered 1, 2, 6, 9, 12, 14 and 16, letters written by officers of the company, and which, on motion of plaintiff, were not admitted in evidence.

Robert J. Christ, former division engineer of defendant, testified he went upon the land in question in June, 1928, and inspected the same and saw the depressions. In July, 1929, he made his first survey of the land and made a plat of the premises from his notes of the survey and also made a tracing from it, which is defendant's exhibit 7, and that he sent it to McFadden in Chicago. There were depressions on the land, indicated on defendant's exhibit 7 by the letters A, B, C and D. He again surveyed the depressions, A, B and C, in 1935.

Two witnesses, who were division engineers of the defendant, went upon the land in 1928 and saw the depressions, A, B and C, and they with one other wit-

ness gave it as their opinion that depression 4 was not a mine sink.

Four witnesses, who resided in Springfield and who were either farm managers and did appraisal work or owned farm lands and knew farm values, testified as to their opinions of the damages sustained by plaintiff.

Appellant contends that it is shown by the clear preponderance of the evidence that all of the depressions were on the land as early as July, 1929; that there is in the record some evidence of the witnesses, who were on the land from time to time, who say they first noticed depressions at later dates; that, in comparison with the mass of direct, circumstantial and corroborative evidence offered by defendant clearly establishing the existence of those depressions long prior to the pertinent date, the evidence of plaintiff's witnesses is of little weight. Appellant further contends that the difficulty in this case is only in part that the conclusion reached by the jury is against the weight of the evidence. This case presents a different situation. The verdict of the jury is not only against the weight of the evidence, but is in conflict with admitted facts. The question presented is not whether a verdict as to a disputed fact should be allowed to stand, but whether the facts shall be compelled to give away to the verdict.

We have carefully considered the evidence and are unable to agree with the contention of appellant that it appears from the greater weight of the evidence that the depressions were in existence and of the same size, shape and depth in the fall of 1929 as they were when the suit was filed on April 3, 1935.

The witnesses for plaintiff were familiar with the land, and some of them had worked there for many years as farm hands and were in a position to know the conditions of the surface, and they testified as to when the subsidences appeared and all agreed that, with the exception of subsidence no. 2 as shown on plaintiff's exhibit, all occurred subsequent to April 3,

1930. The question as to when the several subsidences occurred was a question of fact for the jury. We are also of the opinion that the verdict of the jury is not contrary to the manifest weight of the evidence, and is not in conflict with the admitted facts.

In arriving at the conclusion that the verdict is against the weight of the evidence and is in conflict with the admitted facts, counsel for appellant refers to, considers and comments upon the weight as evidence of defendant's offered exhibits 1, 2, 6, 9, 12, 14 and 16, all of which were excluded from the consideration of the jury by the court and are entirely outside of the record. We are unable to agree with appellant's contention that a comparison of plaintiff's exhibit 14 with defendant's exhibit 7 would conclusively show that plaintiff's land had not changed in contour in the last six years.

Objection is also made to the admission by the court of plaintiff's exhibits, nos. 1, 15 and 16, for the reason that in the caption of each there appears the words, "Mine Sinks in S. W. ¼, Sec. 36, 16–5, W. of 3rd P. M., investigation by Wood, Walraven & Tilly, surveyed March 14, 1935, and May 24, 1935." The exhibits each contained the words, "Sink No. 1," "Sink No. 2," "Sink No. 3," "Sink No. 4." There is no doubt but that a plat, which bears written recitals that might be considered by the jury as testimony, is incompetent and should not be admitted in evidence over the objection of the opposing party. We fail to find in the abstract of the record where any objection was made to either of these exhibits upon the ground that they contained incompetent, descriptive matter which might be considered by the jury as testimony in the case. If such objection had been made in the trial court the improper matter could have been eliminated. Not having raised the question in the trial court it cannot now be urged on appeal. Another error is called to our attention. One of the instructions informed the jury

that they were to disregard any damage to plaintiff either on account of the occurrence or increase in size of depression no. 2, but the court permitted these exhibits in which sink no. 2 was clearly outlined in exaggerated form to go to the jury. This was not called to the attention of the trial court.

Appellant insists that the court erred in excluding its offered exhibits 1, 2, 6, 9, 12, 14 and 16, and states that all questions as to the identification of these letters were waived, and they were admitted to be genuine as to content and correct as to dates, that plaintiff's counsel contends, and the trial judge fell into the error of assuming, that the letters were barred by the hearsay evidence rule, but the letters fell within an important exception to the hearsay rule, viz.: that in cases where, regardless of the truth or falsity of the statement, the fact that the statement has been made is relevant, the hearsay rule does not apply and the statement may be shown.

These letters were all written in the years, 1928, 1929, and the last one in March, 1930, and by officers and employees of the defendant to some officer or employee and the subject matter of the letters was the surface condition of the land in question, and the giving of opinions as to whether subsidences had occurred and directions from superior officers to others as to what should be done relative to determining, from an inspection of the surface of the land, as to whether cracks had appeared and investigation as to costs of drainage.

Although offered on the theory that they were competent to substantiate the statement of witnesses for defendant, who testified that subsidences had occurred as early as 1929 to 1930 and 1931, yet, if admitted, in evidence, the obvious effect would be to convey to the jury evidence of the fact that all subsidences had occurred prior to April 3, 1930, and more than five years prior to the commencement of the suit.

This question is similar to the one decided by our Supreme Court in the case of *Bagley v. Grand Lodge of A. O. U. W.*, 131 Ill. 498. In that case John H. Bagley, a deceased son of Margaret Bagley, the plaintiff in error, was the holder of a beneficiary certificate in which his mother, Margaret, was designated as beneficiary. The contention of the defendant was that before the death of John the right of recovery was forfeited by the failure to pay certain assessments which were required to be paid to keep his certificate valid. The trial court admitted in evidence, over the objection of the plaintiff, various letters and correspondence which passed between the grand master workman of the order and various members of the judiciary committee of the association, in which facts, upon which were supposed to be based the claim of plaintiff and the defense of the order, were stated and commented upon at length, and the merits of the demand made by plaintiff and the question of the legal liability of the defendant were discussed, and the opinions of the writers expressed. The court said: "It would seem it needs no argument and no citation of authorities to show this action of the court was erroneous. The opinions of the officers of the defendant corporation were immaterial, and it is contrary to first principles that such opinions and the statements of the officers of one party to the suit, in regard to the law and the facts involved in the controversy, made in the absence of the opposing party, should go as evidence to the jury trying the issues. The law does not permit a party to a suit to thus make evidence for itself."

It is an admitted fact that depression no. 2 had occurred prior to April 3, 1930, and the controverted fact as to whether depressions, nos. 1, 3 and 4, were in existence and of the same size, shape and depth in the fall and summer of 1929, as they were when the suit was filed on April 3, 1935, could only be proven

by competent evidence introduced on the trial. We are of opinion that the trial court did not err in sustaining the objections to the admission in evidence of exhibits 1, 2, 6, 9, 12, 14 and 16, offered by defendant.

Appellant insists that the giving of instruction no. 5½, on behalf of plaintiff, was error. This instruction is as follows:

"The Court instructs the Jury, that in fixing the amount of the damages to which the plaintiff is entitled, if any, you are not bound by the opinion of any particular witness or witnesses who have testified in this case. In fixing the amount of such damages, if any, you have the right to consider not only the opinion of any such witness or witnesses, if any, but all other facts and circumstances of the case, in so far as the same have any bearing upon that issue, if any, and also your own knowledge and experience as men, in so far as the same will enable you to arrive at a just and fair conclusion upon said issue of damages, if any."

Appellant takes the position that, in fixing the amount of plaintiff's damages, the jury did not have the right to take into consideration their "knowledge and experience as men." We are of opinion that this instruction is erroneous in that regard.

In cases, under the eminent domain statute, a view of the premises is required, at the request of either party, and such view is in the nature of evidence and may be considered by the jury in making up their verdict, and for that reason, in those cases, an instruction is proper which informs the jury that they have a right to use their own knowledge of land values, if any, gained through experience and observation, and that from a consideration of the testimony of the witnesses and the jury's view of the premises and their own experience and knowledge of land values, if any, the jury may endeavor to arrive at the fair cash market value of the land sought to be condemned.

*Sanitary Dist. of Rockford v. Johnson,* 343 Ill. 11, 174 N. E. 862. In these cases, however, the jury may not ignore the evidence and fix compensation and damages contrary thereto, and in such cases it is only where the evidence is conflicting that the jury may draw their conclusions from view, and, even then, a verdict beyond the maximum or less than the minimum fixed by the testimony will not be sustained. *City of Chicago v. Koff,* 341 Ill. 520, 173 N. E. 666.

It is only because of the fact that the eminent domain statute requires a view of the premises at the request of either party, that the jury may consider its view of the premises in making up their verdict, and the court can instruct them that they have a right to use their own knowledge of land values gained through experience and observation in arriving at the fair, cash market value of the land to be taken.

At common law, view by the jury was permitted in certain actions affecting real estate, the purpose of which was to better enable the jury to understand and apply the evidence at the trial to the matter in controversy, and such view was allowed only at the discretion of the court. The jury were not, under the common law, authorized to consider as evidence any facts derived from such view, but the issue of fact was to be determined from the evidence offered on the trial, the reason being, that if the jury be allowed to consider their view as evidence, reviewing courts would not know upon what the jury based their finding or determine whether it was based on competent evidence or upon the consideration of incompetent matters that were not admissible under the issue. *City of Chicago v. Koff, supra.*

The jury in this case did not view the premises and, even if the court in its discretion had permitted such view, its purpose would have been merely to enable the jury to understand and apply the evidence introduced at the trial and they would not be authorized to

consider as evidence any facts which were derived from such view. Neither at common law nor by statute is a jury authorized in an action for damages to real estate to consider, in addition to the evidence offered on the trial, their own knowledge and experience as men, to enable them to arrive at a just and fair conclusion upon the issue of damages. It was the duty of the jury in this case to consider all the evidence in the record upon the question of damages, in arriving at their verdict. The giving of this instruction was error.

Appellant also complains of the giving of plaintiff's instruction no. 2, which is as follows:

"The court instructs the jury that even though you should believe from the greater weight of the evidence that neither one or more of the sinks or subsidences, referred to herein as Sinks numbered 1, 3 and 4 respectively, if any, on the plaintiff's lands, were actually in existence five years before the filing of plaintiff's suit herein, yet if during said five-year period such sink or subsidence, if any, increased either in area or depth, and that plaintiff's land was damaged by such increase in size or depth, if any, the plaintiff would be entitled to recover such damages caused by such increase, if any, provided you further believe from the greater weight of the evidence that such increase in size or depth of such subsidence or subsidences, if any, was caused by the prior removal of the coal by defendant, or any of its constituent companies."

It is true, as pointed out by appellant, that plaintiff offered no evidence as to the extent of his damages upon the theory that the depressions, although in existence prior to April 3, 1930, increased in size during the succeeding five-year period and any such damages as the jury may have assessed must have been arrived at by the jury from their own knowledge and experience as men.

"The object of a declaration in an action at law is to state the facts constituting the plaintiff's cause of action upon which he relies to recover, so as to enable the defendant to prepare his defense and meet the facts alleged with appropriate evidence. In order to recover, the plaintiff must prove the case alleged in his declaration. It is a primary and elementary principle that a plaintiff can recover only on the case made in his declaration. He cannot make one case by his allegations and recover on a different case made by the proof." *Feder v. Midland Casualty Co.*, 316 Ill. 552, 147 N. E. 468.

There is no allegation in the complaint of plaintiff that either one or more of the sinks, numbered 1, 3 and 4, were actually in existence five years before the filing of plaintiff's suit and that during said five-year period such sink or subsidence increased in area or depth and that plaintiff's land was damaged by such increase in area or depth, and even though the evidence may have proven such facts, yet the plaintiff could not recover because of a want of such allegation in its complaint. For the reasons pointed out we are of opinion that the court erred in giving to the jury plaintiff's instruction number 2.

The position of the defendant, relative to the fixing of damages, is that, in so far as the ascertainment of the amount is concerned, these mine sinks, if they were such, should be treated precisely like other depressions, however caused, and defendant offered instructions 16, 17, 18 and 19, in support of its position, which were refused by the court. They differed only in phraseology, and instruction 16 was as follows:

"The cause of the depression is not material upon the question of the amount of damages, if any, sustained by the plaintiff. The depressions do not injure the land to any greater extent merely because they are artificial in their nature than they would if natural conditions of the same size, location, shape and depth."

"For the damages occasioned from subsidences of such parts of the land as had taken place at the time this suit was commenced, the appellee could in this action recover, but not for such as might thereafter occur." *Richards v. Gundlach,* 245 Ill. App. 264. The injury complained of, being to the land itself, the measure of damage is the difference in the market value of said premises immediately before and after the injury in question. *Richards v. Gundlach, supra.* The testimony of competent witnesses as to their opinion of the fair cash market value of the premises, immediately before and after the injury in question, is one of the methods of arriving at the damages sustained. *Chicago & E. R. Co. v. Blake,* 116 Ill. 163.

Witnesses, testifying as to the fair cash market value of the premises after the injury, gave their opinion as to its then value based upon their knowledge and experience gained as dealers in real estate from farm loan business and appraisers of lands. The witnesses, testifying on behalf of appellee, stated on cross-examination that such lands were not as salable as lands with natural depressions of like area and depth and purchasers would not so readily buy such lands or pay so much therefor, not, so far as the testimony of such witnesses disclosed, that fear of future subsidences or speculative damages entered into the fixing of the amount such purchasers were willing to pay, but that such lands were not so much sought after, especially for building and platting purposes.

What prospective purchasers of lands of this character are willing to pay and the price at which such lands change hands, after the injury to the same, fixes the fair cash market value of the same, although if in establishing such values the purchasers take into consideration fear of future subsidences or other remote, speculative and uncertain elements of damage, the application of the rule would not result in the fixing of the true measure of damages. Because the evidence

shows that mine subsidences on lands affect the sale value thereof more than natural depressions, we are of opinion that the contention of appellant, that relative to the fixing of damages, mine sinks do not injure the land to any greater extent than natural conditions, is without merit.

Appellant also assigns as error improper argument of counsel for plaintiff and that the verdict is excessive. While the argument of counsel for plaintiff should have been confined to the matters within the record, yet we do not think the conduct of counsel while improper, is reversible error.

The jury returned a verdict in the sum of $18,227, the fixing of the amount of which may have to some extent been influenced by the instruction of the court, informing them they could consider their own knowledge and experience as men, in so far as the same would enable them to arrive at a just and fair conclusion upon the issue of damages. In our opinion the verdict is excessive. It fixed the damages to the land at over $165 per acre and plaintiff still had the land, which, in its then condition, his witnesses testified was worth from $250 to $400 per acre, having on it four mine sinks, which from the testimony of his own witnesses on cross-examination would not hurt the land much or depreciate the fair cash market value thereof for subdivision purposes, to any appreciable degree, if the depressions were of natural origin.

We are of opinion that the case should be submitted to another jury under proper instructions as to the fixing of damages, and with argument of counsel confined strictly to the record in the case. For the errors indicated the judgment of the circuit court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*