## MAULDING v. LOUISVILLE & N. R. CO.

No. 9562.

Circuit Court of Appeals, Seventh Circuit.

June 21, 1948.

Harold Baltz, of Belleville, Ill., for appellant.

Louis Beasley, of East St. Louis, Ill., for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

By this appeal defendant seeks to reverse a judgment recovered against it by plaintiff for injuries to his person and damages to his property, occasioned by the alleged negligence of defendant in causing two coal cars to collide with plaintiff's auto-

mobile. The issues were submitted to a jury and a general verdict was returned in plaintiff's favor.

Plaintiff's complaint consisted of two counts: the first alleged that defendant was negligent in (a) kicking certain cars along its track in violation of c. 114, § 83, Ill. Rev.Stat.1947; (c) causing and permitting the cars to run along its track without any light or signal of any kind on the crossing; (d) causing and permitting the cars to run along its track without any person being stationed at the crossing or upon the cars to give warning of the approach of the cars; and (e) kicking or causing the cars to be propelled toward and over the crossing at a high speed, without any warning of their approach. The second count charged defendant with wilful and wanton conduct. Defendant's answer denied all the charges of negligence and wilful misconduct, and alleged that plaintiff's injuries were the result of his failure to exercise due care for himself and his property.

Upon this appeal defendant's principal contention is that the trial court erred in overruling its motion to direct a verdict in its favor as to the wilful and wanton count. It asserts that there was no proof of wilful or wanton misconduct on its part, and that the motion should have been sustained.

The gist of the wilful count was that the defendant knew there was no watchman at the street crossing; that it knew there was no brakeman nor light on the cars; that it knew the cars were without any braking power, and that if the cars were kicked they would run down, over and across the public highway; and that knowing these facts, defendant, without any regard for the safety of the lives of persons traveling upon the highway, kicked, caused or permitted the cars to run along its tracks.

Defendant operates a main line track through Illinois, from East St. Louis on the west, passing through McLeansboro on the east. At McLeansboro a branch line proceeds southerly to Shawneetown and is known as the Shawneetown Branch. This branch crosses a public street in McLeansboro, protected only by the usual cross-buck warning signs. The street is a much used highway, some 600 vehicles crossing the tracks every twenty-four hours, and runs east and west. Defendant's tracks run northwesterly and southeasterly. The accident happened at 7:15 P. M., December 30, 1945, while plaintiff was driving his automobile westward and on the right side of the street that crosses defendant's tracks. It was dark, his beam headlights were on, and he was proceeding at ten miles an hour. When he got to within eight feet of defendant's track he stopped and looked, and then, shifting the gears, started his automobile and proceeded across the track, where he was struck by defendant's cars coming from the north at twenty miles per hour, and dragged a distance of about seventy feet. There was no brakeman nor light on the front end of the coal car and no switchman at the crossing; no whistle or bell had been sounded to give warning of the approaching cars.

On the night in question defendant's train came from Howell, Indiana, and, at a point 900 feet north of the crossing involved, switched two cars of coal onto the Shawneetown Branch, the tracks of which descend southward, 7 inches to each 100 feet. One Simerrell, a brakeman, testified that the two cars were a part of a cut of cars; that he climbed onto the most northerly car of the two, set its brakes, returned to the ground, uncoupled the two cars, and gave a signal to the engineer to proceed northward; that when he turned to get on the cars that were leaving under the control of the engine, he noticed that the two cars were starting to move southward; that he ran to the forward car and set its brakes but that this failed to stop the cars; that he did not know what was the matter with the brakes; that he then climbed to the ground and ran to the front end of the forward car with his electric switch lantern for the purpose of warning persons of the approaching cars; that as the cars approached the street crossing he was on the southeast corner of the car swinging his lantern and that the coal cars were about thirty-five feet north of the crossing when he noticed the approach of plaintiff's automobile, then thirty-five feet east of the track; that he waved his lantern and hollered; that plaintiff's automobile did not stop, and when the forward car was about two feet

from the street crossing he jumped off the coal car.

Defendant knew that a much traveled public highway was located 900 feet south of where it had uncoupled the coal cars in the nighttime; it knew that the cars were without braking power, or could have discovered that fact by the exercise of ordinary care; that the cars were without any light or warning signal; that the track was downgrade to a frequently used public highway where no watchman was stationed; and that cars without brakes would descend and gain momentum as they ran down the decline toward the public street. The cars in question ran four miles beyond the crossing. Under this state of the record, the trial judge could not have held as a matter of law that there was no evidence tending to prove the charge of wilfulness and wantoness; rather, we think that it was a question for the jury to say whether or not defendant was guilty of wilful and wanton misconduct.

[2, 3] The record also discloses that defendant, at the close of all the evidence, offered peremptory instructions directed against the specific allegations of negligence contained in paragraphs (a), (d), and (e) of the complaint. There can be no question but what there was proof tending to support paragraphs (c), (d), and (e). Nevertheless, it says there was no evidence to sustain paragraphs (a), (d), and (e), and that when the court refused these instructions, it erred. There is no merit in this contention. Rule 8(e) (2), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that a party may state in one complaint as many claims as he has, and in Illinois a plaintiff may charge different acts of negligence in different paragraphs of the complaint as the cause of the injury alleged, but he is not bound to prove each paragraph of the complaint in order to entitle him to a verdict. He may recover if one paragraph is sufficient and it is supported by the proofs. Colesar v. The Star Coal Co., 255 Ill. 532, 99 N.E. 709; Liska v. Chicago Rys. Co., 318 Ill. 570, 583, 149 N.E. 469; and Wanless v. Peabody Coal Co., 294 Ill.App. 401, 13 N.E.2d 996.

This brings us to the last question in the case, whether the admission of plaintiff's exhibit 1 was error. This exhibit is a letter written to plaintiff by one Millet, defendant's claim agent. In the letter Millet advised plaintiff that he had sold the wrecked automobile for $237.50 and was enclosing a draft for that amount payable to plaintiff. The letter then continues: "This amount is to be credited to the railroad company when final settlement is made." The argument is that the primary issue in the case was "liability," that the secondary one was the amount of damages if liability existed, and that since plaintiff testified that he had received $237.50 for the sale of the automobile, the letter was irrelevant. A further argument is that the letter was an offer of compromise.

It is true that it is the policy of the law to favor the settlement of disputes, to foster compromise, and to promote peace; hence an unaccepted offer to compromise a claim is inadmissible in evidence at the trial of a controversy over the claim. Hammond Packing Co. v. Dickey, 8 Cir., 183 F. 977. Here it appears that at the time the letter was offered, the only objection was that it was improper, immaterial and irrelevant. No specific objection was made that the letter was incompetent because plaintiff had already testified that he had received $237.50, nor was any objection made that the letter was an offer of compromise or that it tended to show an attempt to compromise any controversy. The objection that the letter was improper, immaterial and irrelevant was too general. A specific objection should have been made at the trial. It is not permissible to so frame an objection that it will serve to save an exception for the action of a court of review and yet conceal the real complaint from the trial court. Gage v. Eddy, 186 Ill. 432, 57 N.E. 1030. Moreover, in our case Millet did not testify at the trial, and there was no proof that any offers or negotiations for settlement were or had been pending between the parties. The only reference in the record concerning the letter was an instruction of the court which told the jury that if it found for plaintiff the measure of damage for the automobile

would be its fair market value less any amount received as proceeds from its sale after the accident. Consequently, it cannot be said that the letter was an offer of compromise, nor can it be said that the introduction of the letter was harmful to defendant. In this state of the record we do not regard the admission of the letter as warranting a reversal.

Affirmed.