Lodema Nadine Buis, Edith Buis, and Leslie Gebhart, Plaintiffs-Appellees, v. Peabody Coal Company, a Corporation, Defendant-Appellant.

Gen. No. 10,452.

Third District.

May 20, 1963.

318

Hershey and Bliss, of Taylorville (Don E. Beane, Jr., of counsel), for appellant.

Coale, Johnston, Flesher & Taylor, of Taylorville, for appellees.

REYNOLDS, J.

This is a suit for damages alleged to have resulted from subsidences on a 60-acre tract of land, in Christian County, Illinois. Lodema Nadine Buis sued as owner and Edith Buis and Leslie Gebhart as tenants. The defendant, Peabody Coal Company, purchased the coal under the land in question from Stonington Coal Company in 1916. There were two owners intervening, but apparently, they were only intermediaries and Peabody Coal Company was the real purchaser. The three deeds, one from Stonington Coal Company to James W. Murray, one from James W. Murray to Joseph Solari and one from Joseph Solari to Peabody Coal Company, are essentially identical as to the subject matter conveyed and the terms. The language of the deeds, as they relate to the land in this suit, is that the grantor conveyed all the coal and other minerals underlying the surface of the land in question subject to the right-of-way of the Wabash Railroad Company, together with the right to mine, remove, sell and use the same and to use the vacancies occasioned by such removal for roads and passways, it being understood between the parties that a portion of said coal had been mined and removed from beneath the surface of said lands and the conveyance as to such coal was only for such portion that remained unmined.

Some time before this suit, a settlement had been made between Peabody Coal Company and the owner of a 20-acre tract just south of the 60-acre tract involved in this suit. In the original complaint in this

319

case, the whole 80-acre tract was claimed to be damaged, but the complaint was amended to include only the north 60 acres.

The evidence is uncontradicted that although Peabody Coal Company bought all the coal under the 60-acre tract, it only mined the coal under the northwest corner of the tract. The evidence on the part of the plaintiffs shows four separate and distinct areas claimed to have subsided, but the evidence of G. L. Morris, an engineer employed by Peabody Coal Company, showed that Peabody Coal Company only mined coal under Area 1, in the northwest corner of the tract, and did not do any mining under Areas 2, 3, or 4. There is no evidence of any use of the passageways or areas under the land other than under Area 1. There has been no mining under the Buis land for 40 years. The plaintiffs claim the subsidences began in 1949, and have become progressively worse, rendering drain tile useless and creating ponds on the land upon which water stands, thereby affecting the crops planted thereon.

Two questions arise on this appeal. First, assuming that the claimed sinking of the land areas was the result of negligence on the part of the Stonington Coal Company, would that negligence be assumed by the Peabody Coal Company when it bought the coal under the land in question? Or, stated another way, is Peabody Coal Company responsible for negligence on the part of its predecessor in title, if there was negligence? Second, was there any competent and proper evidence as to values or the measure of plaintiffs' damages, upon which the jury could base its verdict?

■ Plaintiffs contend that Peabody Coal Company bought the whole mine and is liable in damages for the subsidence claimed, irrespective of what part of said subsidence might or might not have been oc-

casioned by the predecessor mining company, the Stonington Coal Company. Plaintiffs contend that to hold otherwise would be to allow Peabody Coal Company to buy only that part of the existing mine that was good and to reject that part which might turn out to be bad. Plaintiffs admit there are no cases in Illinois to support this theory, nor do they cite any cases in other jurisdictions. Defendant contends that the case of Wanless v. Peabody Coal Co., 294 Ill App 401, 407, 13 NE2d 996, is authority to the contrary. In that case, one of the six corporations that afterwards was merged into the Peabody Coal Company was the original coal mining company. A statute in force at the time of the merger or consolidation of the six corporations provided that the rights of creditors should be preserved unimpaired, and all liabilities and duties of the respective corporations should attach to such single corporation and might be enforced against it to the same extent as if such liabilities and duties had been incurred and contracted by it, and that any action pending against one of the corporations, merged or consolidated, might be prosecuted to judgment as if consolidation had not taken place, or the merged or consolidated corporation might be substituted in its place. This court held that under the provisions of this statute, plaintiff could recover against Peabody Coal Company any damages sustained by reason of the negligent act of either of the respective merging corporations within the five-year limitation period. Defendant contends that by necessary inference, the language of that case holding Peabody Coal Company liable, because one of the six merging corporations was liable, by negative application holds that the successor corporation in this case is not liable.

This court is not inclined to agree with this position of the defendant. The Wanless v. Peabody Coal

Co., case is authority only for what it decides; namely, that a corporation composed of merged or consolidated corporations can and will be held for the negligence or liabilities of any one of the merging or consolidating corporations.

There is no contention that the two coal companies, Stonington Coal Company and Peabody Coal Company had any relation to each other, other than seller and purchaser. The deed under which Peabody Coal Company acquired title conveyed only coal under the surface of the land that remained unmined. There was no assumption on the part of Peabody Coal Company of any of the liabilities or obligations of Stonington Coal Company. There is no statutory or case authority that holds that a successor coal company or successor corporation becomes responsible to the owner of the surface for claimed negligence in mining coal on the part of the predecessor mining company. While a subsidence case might have phases that would not occur in ordinary business transactions, the general rule is well stated in Alexander v. State Sav. Bank & Trust Co. & Liberty Bank of Chicago, 281 Ill App 88, 96, where the court says:

> " 'The general rule, which is well settled, is that where one company sells or otherwise transfers all its assets to another company, the latter is not liable for the debts and liabilities of the transferor. The purchasing or transferee company, that is to say, is not liable on the other company's obligations merely by reason of its succession to such company's property. To render it liable there must be an agreement express or implied, to assume the other company's debts and obligations.' "

■■ There is no trust created by the sale of the assets of Stonington Coal Company, even if the sale

322

constituted a sale of all assets, lock, stock and barrel. The trust fund doctrine does not prevent a corporation from disposing of the whole or any part of its assets for value and in good faith, and where it does so, the purchaser takes the assets discharged from any trust in favor of the creditors of the selling corporation. Knass v. Madison & Kedzie State Bank, 269 Ill App 588. Here, there was no trust, no assumption of liability, no agreement other than that of purchase, and in the absence of statutory or case authority to support the plaintiffs' theory of liability, this court will not undertake to venture into new fields of litigation. With coal mining having been going on for hundreds of years, and in the State of Illinois for nearly a century, it is strange that there are no decisions as to the liability of one coal company that purchases the unmined coal from another coal mining company, for negligence on the part of the original mining company. Mining companies have flourished and died. No assets remain and there is nothing remaining except the old coal passageways under the ground. Another company owns whatever rights to mine coal the original company once had. As in this case, in many instances forty years or more have gone by since the last active mining operation. To hold that the purchaser of the assets of the original coal company is liable for subsidence of the surface occurring forty years thereafter, or even twenty years thereafter, would be to throw the door wide open for a multitude of suits for surface subsidence. In this case, we must hold that Peabody Coal Company is liable for its own negligence, but not liable for any negligence of the Stonington Coal Company.

As to the second point, was there any competent evidence as to values or the measure of damages upon which the jury could base its verdict? It is admitted that Peabody Coal Company did some

mining under the northwest corner of the 60-acre tract, and if there was any competent evidence as to damages to the surface of the land over this part of the mining operation, Peabody Coal Company would be liable.

There were five witnesses for the plaintiff and upon their evidence rests the question of whether there was competent proof of damages. The owner, Lodema Buis, testified that the ponds developed on her farm and that these low places had affected the crop yield. She did not testify as to the value of the land before the ponds developed or after.

A neighbor, F. W. Weitecamp, testified that he had seen water stand on the Buis land. He couldn't say whether there had been any difference as to accumulation of water on the Buis land in the past ten years. He did testify that good crops formerly were raised on the Buis land, but he had not seen a good crop on the land for the past 10 or 12 years. When asked his opinion as to the fair cash value of the Buis land, or an estimate of the value at the time of trial and ten years before, the witness refused to answer.

Wayne Emmerson, another neighbor living one quarter of a mile east of the Buis farm, testified he saw the Buis land every time he went to town. This witness had observed a change in the surface of the Buis land and stated that in the last ten years there was more water standing on it, and he had observed the sinking spots. In the judgment of this witness, approximately 20 acres of the Buis land were affected, some in the northwest corner, some near the center towards the southeast, and some about the half-way point between the two 40-acre tracts. Upon cross-examination, it developed that this witness considered Areas 1 and 3 as connected and Areas 2 and 4 as connected and estimated all of the area that had subsided, at 20 acres. The testimony of this wit-

ness fails to show any difference or estimate of the value of the land before and after the subsidence.

The only witness that testified as to a difference in value of the land before and after the subsidence was Leslie Gebhart. He was familiar with the land and had been raised within two miles of the land and had farmed it since 1951. He identified four separate areas of subsidence on the 60-acre tract belonging to Lodema Buis. He testified that in the areas of subsidence there was crop failure, and that tiles through the land failed to drain. He had attended farm sales and estimated the difference in value before and after at $150 per acre. On cross-examination, he testified that in arriving at an estimate of damage of $150 an acre he took into consideration the whole 80-acre tract, and the four areas of subsidence.

The question of proof of value must rest on the testimony of Gebhart, since no other witness testified as to value of the land, before and after the subsidences were noticed. It is true that Wayne Emmerson testified that the fair, cash market value of land in the community was $600 per acre, but he did not testify as to the value of the Buis land before and after the subsidences. All of the witnesses for the plaintiff testified to a change in the land and identified areas as sunken, but with the exception of Gebhart, they did not value the land before and after the subsidences. The proof of value must rest upon the testimony of Gebhart. Although 20 acres off the south end had been the subject of litigation and payment had been made for damage to the south 20 acres, the witness based his valuations on the whole 80 acres. The testimony showed that Peabody Coal Company had mined only under the northwest corner of the land, but the witness based his valuations upon three other subsidences which the uncontradicted testimony of Morris, the engineer for the Peabody Coal Com-

pany, showed was not caused by any mining by Peabody Coal Company.

At the close of all the evidence, defendant moved to strike all testimony of Gebhart and Emmerson as to evaluation. This motion was denied. Gebhart was a qualified witness as to value. The question raised by the defendant is that his testimony as to value was based upon improper elements and was therefore incompetent. Our courts have held many times that although any qualified individual may state his opinion as to the property value, there must be some preliminary showing of the factors upon which such opinion is based, and where improper elements have been considered, the testimony is incompetent and upon motion must be stricken. City of Chicago v. Central National Bank, 5 Ill2d 164, 125 NE2d 94; Illinois Power & Light Corp. v. Peterson, 322 Ill 342, 153 NE 577; Forest Preserve Dist. v. Hahn, 341 Ill 599, 173 NE 763; Department of Public Works v. Lambert, 411 Ill 183, 103 NE2d 356; City of Chicago v. Giedraitis, 14 Ill2d 45, 51, 150 NE2d 577. In the Giedraitis case, a witness based his valuation upon future rental income, which the court held was improper and the ruling of the trial court striking his testimony was upheld. In the Hahn case, the witness fixed the value of the property by considering the amount of business the man had been doing, including the prices he was charging and the number of people who came in the place. This was held improper. In the Central National Bank case, a witness included the amount of business on the premises, admitting that others might not do as well. The court held that his opinion was predicated upon speculative and improper elements and should have been rejected.

Here the witness testified his valuation was based on consideration of the whole 80-acre tract and upon the four areas of subsidence. His testimony as to

valuation is clearly based upon improper elements and should have been stricken. The 20 acres to the south were not a part of the 60-acre tract, and any damage to the 20 acres had been paid for. The three other subsidence places were not caused by the defendant, or resulted from any mining operation by the defendant, and should not have been considered by the witness.

Striking the testimony of Gebhart leaves no testimony upon which the jury could base its verdict. There was testimony of changes in the land, but no testimony of changes of values. The jury had no right to guess. Its verdict must have some basis of evidence, and cannot be guesswork or compromise.

The judgment will be reversed.

Reversed.

CARROLL and ROETH, JJ, concur.