(No. 38446.—

GEORGE A. TANKERSLEY *et al.,* Appellants, *vs.* PEABODY COAL COMPANY, Appellee.

*Opinion filed November 24, 1964.*

HERSHEY, J. took no part.

MILEY & MEYER, of Taylorville, and SORLING, CATRON AND HARDIN, of Springfield, (THOMAS L. COCHRAN, of counsel,) for appellants.

HERSHEY AND BLISS, of Taylorville, (ROBERT D. McWARD and DON E. BEANE, JR., of counsel,) for appellee.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiffs brought an action for damages in the circuit court of Christian County against the defendant, Peabody Coal Company, for alleged removal of subjacent support creating subsidences in farm land, and for loss of crops. The jury returned verdicts of $8,000 and $1,200 in favor of plaintiffs Tankersley and Norville, respectively. Defend-

ant filed a motion for judgment notwithstanding the verdicts, which was denied, but made no motion for a new trial. On defendant's appeal the Appellate Court reversed the judgment on the ground that there was no competent evidence to support the verdicts under the proper theory of liability. (45 Ill. App. 2d 101.) We have granted plaintiff leave to appeal.

This cause presents as a matter of first impression in this court the question of whether a coal mine operator is liable for surface subsidence over areas mined only by his predecessor in title, where there has been no express assumption of such liability, and the predecessor is a wholly unrelated business entity.

Plaintiffs George Tankersley and John Norville are the owner and tenant, respectively, of 160 acres of land in Christian County. Prior to 1916 the subsurface mineral estate thereof was owned by Stonington Coal Company which operated an underground coal mine extending below the land in question. In 1916 Stonington conveyed the mine to the defendant, Peabody Coal Company, a wholly unrelated corporation. Peabody then mined coal in some areas under the premises until 1924, at which time the mine was closed down. In buying Stonington's interests, Peabody did not undertake to assume any of Stonington's liabilities, and Stonington Coal Company has long since been dissolved. Plaintiff Tankersley bought the farm in 1935.

The complaint upon which the case was tried charged that Peabody was liable for subsidences in the plaintiffs' land caused by the operations of Stonington as well as its own mining operation. In their answer, and at the pretrial conference, counsel for defendant objected to this theory, contending that Peabody could not be held liable for any subsidence which occurred above areas which were mined out only by Stonington. Both parties asked the court for a ruling on this theory prior to trial and the court, in a statement for the record, ruled that:

"Both parties agree that there are not any clear cut authorities in Illinois to guide the Court in its decision in the matter, and each counsel stated their positions relative to the theories of the case; and in order to avoid a conflict throughout the trial, the Court, in an educated guess rules that the successor Peabody Coal Company, having assumed the responsibility of mining the remainder of the coal under the plaintiffs' lands would have assumed the responsibility to have maintained the mine in a safe condition and therefore would be liable for all subsidence covering the land; and to avoid the necessity of the defendants to object to each question that might be asked concerning this question, the Court hereby reserves the defendant's defense on this question throughout the trial to each question that might be asked, without their making a specific objection to the question."

At the trial plaintiffs introduced a topographical map of the farm showing all alleged subsidences, designating six areas. Both parties introduced scaled maps of the underlying "Peabody Coal Company Mine No. 21", indicating the workings of Stonington and Peabody. It is undisputed that certain of the alleged subsidences are over areas mined exclusively by Stonington. There was also testimony introduced by the plaintiff as to the various values of the land before and after the subsidences; that at times water lay in depressed areas at various points on the farm as indicated on the topographical maps; and that the depressions were, in fact, subsidences due to the underground mining operations. Defendant offered testimony rebutting plaintiffs' claim that all the depressions were subsidences, which testimony seemed to indicate that only one or possibly several of the alleged depressions were in fact subsidences. Defendant, too, introduced testimony as to the value of farm land in Christian County and as to the value of the Tankersley farm before and after the alleged subsidences. All of the plaintiffs' testimony in regard to a

decrease in the farm land's value was predicated on differences in value prior to the alleged subsidences and the value after all alleged subsidences. Both sides made motions for directed verdicts at the close of their opponents' evidence, which were denied.

The evidence on behalf of plaintiff Norville, the tenant, was limited to his own testimony as to acreage and price of crops lost in 1951 because of water lying in several of the designated areas, and as to another area developing later in 1955.

At the end of defendant's evidence, defendant's counsel made an offer of proof as to the difference in the value of the Tankersley farm as a result of depressions overlying only the portion of the underground workings which were mined by Peabody. Plaintiff objected to this offer on the ground, among others, that it was contrary to the initial ruling of the court. The court accordingly excluded the proof. Thereafter the jury returned verdicts of $8,000 in favor of owner Tankersley and $1,200 in favor of tenant Norville.

Defendant filed a post-trial motion for judgment notwithstanding the verdict on the grounds, essentially, that the only evidence as to the damages suffered by plaintiffs was predicated on all the depressed areas and not just those over the area mined by the defendant; that the evidence supporting plaintiff Norville's claim furnished no adequate basis for any award; and that, therefore, there was no competent evidence to support the verdicts because there was no evidence as to damages which was limited solely to the liability of the defendant. The motion was denied by the court on the basis of its pretrial ruling, and the fact that the court thought that, otherwise, there was sufficient evidence to support the verdicts.

Defendant appealed from this ruling, but before the Appellate Court could act thereon, it had occasion to rule on the same basic issue in the separate case of *Buis* v.

*Peabody Coal Co.* 41 Ill. App. 2d 317. In *Buis,* the Appellate Court, deciding the issue for the first time in Illinois, held that a coal company which has purchased coal and mine workings of another unrelated company, without expressly assuming such liabilities, is not liable for subsidences or sinking of land areas due to the mining of its predecessor in title but is liable only for subsidences and the resultant damages due to its own mining operations.

In view of its decision in the *Buis* case, the Appellate Court herein held that the pretrial ruling as to the extent of liability was erroneous. In addition, the court held that the evidence as to damages was incompetent because based on all alleged subsidences and not just those attributable to Peabody; and that since the tenant would be limited to recovery in the same areas of damage as would the owner, the competent evidence as to crop damage was insufficient to sustain the verdict of $1,200 in favor of Norville. Therefore, the Appellate Court reversed the judgment of the lower court.

Plaintiffs first contend that the rule in regard to liability of successor coal companies for subsidences over areas mined only by predecessor coal companies, as enunciated in *Buis* v. *Peabody,* and followed by the Appellate Court herein, is erroneous because it is contrary to basic principles of real-property law. However, the plaintiffs cite no case which supports their theory in this case. As the Appellate Court said in *Buis* at p. 323: "With coal mining having been going on for hundreds of years, and in the State of Illinois for nearly a century, it is strange that there are no decisions as to the liability on one coal company that purchases the unmined coal from another coal mining company, for negligence on the part of the original mining company. Mining companies have flourished and died. No assets remain and there is nothing remaining except the old coal passageways under the ground. Another company owns whatever rights to mine coal the original

company once had. As in this case, in many instances forty years or more have gone by since the last active mining operation. To hold that the purchaser of the assets of the original coal company is liable for subsidence of the surface occurring forty years thereafter, or even twenty years thereafter, would be to throw the door wide open for a multitude of suits for surface subsidence. In this case, we must hold that Peabody Coal Company is liable for its own negligence, but not liable for any negligence of the Stonington Coal Company."

There is, in fact, a dearth of case law in the United States on this question, but the Supreme Court of Pennsylvania, a State well known for coal mining, in *Noonan v. Pardee,* 200 Pa. 474, 50 Atl. 255, possibly the only prior pertinent case, held that a mine operator is not liable for injury to the surface through default of his predecessor. Moreover, an annotation in 139 A.L.R. at 1269-70 states that: "The question of the liability of one operating mines for subsidences of the surface due to excavations made by his predecessor in title has been considered in several cases with the result that the courts have refused to hold the operator liable", and cites as authority *Noonan v. Pardee,* and several English cases decided as early as 1897. To the same effect is section 820(g) of the Restatement of Torts.

We believe the Appellate Court rightly held this to be the best rule. To hold otherwise would be to discourage coal companies from purchasing and entering worked-over mines where there may be resources of coal which were previously economically inaccessible, but which are now commercially valuable because of modern machinery and technically advanced mining methods. Moreover, where, as here, there has been no express relinquishment of the right of support, the coal company's liability depends not on fault but arises from its absolute duty to provide the surface with support. (*Lloyd v. Catlin Coal Co.* 210 Ill. 460; *Wilms v. Jess,* 94 Ill. 464; *Noonan v. Pardee,* 200 Pa. 474,

50 Atl. 255; 36 Am. Jur., Mines and Minerals, sec. 184.) Since it is apparently impossible, even at enormous costs, for a successor coal company to enter a worked-over mine and construct supports which will prevent surface subsidences where predecessors did not leave sufficient support pillars, it would be unreasonable to hold the successor company absolutely liable for damages it could not possibly prevent in areas owned but not mined or otherwise used by it.

The rule enunciated today works no hardship on the owners of the surface lands overlying mine excavations. When such owners purchase they are clearly on notice of the separate underlying mineral interest, as a result of a prior title examination or from the fact that our statutes require that a copy of maps of all coal mines in the county, whether "operating" (Ill. Rev. Stat. 1963, chap. 93, par. 33.01 *et seq.*), or "abandoned" (Ill. Rev. Stat. 1963, chap. 93, par. 34.01 *et seq.*) be filed and kept in the office of the county recorder. Moreover, the statutes require that maps of new, proposed, or reopened mines be promptly indexed by the county recorder as part of the title record of the property affected. (Ill. Rev. Stat. 1963, chap. 93, par. 33.09). Thus, the fact that there are or may be underlying mine excavations is a practical ingredient in the purchase price of such properties. In *Noonan* v. *Pardee,* the court, in discussing the problem faced by a purchaser who is unable to know whether a subsidence may subsequently occur, said at p. 257 (Atl.) : "We answer, that is only one of the incidents attending the purchase of land over coal mines. It is not improbable that this risk enters largely into the commercial value of all like surface land in that region."

Plaintiffs contend that even if the rule of *Buis* be approved, the Appellate Court herein erroneously reversed the judgment of the trial court, whereas the proper disposition would have been to reverse and remand the case for a new trial on the proper theory of liability. We agree.

Here the overriding question of law presented to the

trial court for decision prior to trial went to the scope of defendant's liability. Quantitatively, the resulting pretrial ruling by the court, as to the governing law applicable, allowed the introduction of evidence on the largest possible scope of liability and effectively determined issues as to the admission of such evidence, which would otherwise have been raised by objections during the trial. From a practical viewpoint it was thus virtually impossible for either side to introduce evidence before the jury as to liability and damages which was limited in its scope to alleged subsidence only over areas mined by Peabody. In fact, defendant did attempt to make an offer of proof as to its liability for subsidences only over areas which it had mined but such offer was denied by the court upon objection by plaintiff as being inconsistent with the pretrial ruling.

Although no motion for a new trial was made by either party we feel that this cause should be remanded for a new trial in order to reach a just and equitable conclusion. Generally speaking, it is an established rule that where the Appellate Court reverses the judgment of the trial court for errors of law it should remand the case for a new trial. (*Mirich* v. *Forschner Contracting Co.* 312 Ill. 343; *Abdill* v. *Abdill*, 292 Ill. 231; *Irwin* v. *Northwestern National Life Ins. Co.* 200 Ill. 577; *Jones* v. *Fortune,* 128 Ill. 518.) In *Jones* v. *Fortune,* the court well stated the rule when it said at p. 519: "But it is manifest that if the Appellate Court shall reverse the trial court for error in its rulings of law, it must remand the cause for a new trial, unless it shall find that the evidence does not tend to prove the cause of action alleged, for otherwise it will deprive the plaintiff of the guaranteed right of trial by jury. * * * Appellant is entitled to a new trial, unless the evidence does not tend to prove the cause of action alleged; and he is entitled to have this court review the law as applied to the findings of the Appellate Court in this respect." A remandment

would seem even more appropriate and necessary where, instead of several erroneous evidentiary or instructional rulings, the entire case is tried on the basis of an incorrect pretrial ruling allowing the admission of evidence on an erroneous theory of liability. Hence, we have held that where a case is tried on an erroneous or mistaken theory of law the judgment should be reversed and the case sent back for a new trial. *Iroquois Furnace Co.* v. *Wilkin Mfg. Co.* 181 Ill. 582.

Where a verdict is directed or a motion for judgment notwithstanding the verdict is sustained, or where the Appellate Court directs or enters such judgment, we may examine the evidence to determine whether, as a matter of law, there is any evidence in the record to prove the essential elements of the case. (*Zank* v. *Chicago, Rock Island and Pacific Railroad Co.* 17 Ill.2d 473, 476. Here, there is no dispute that at least some of the area on the farm which has allegedly subsided is over area mined by Peabody. Therefore, plaintiffs have made out a *prima facie* case (*Wilms* v. *Jess,* 94 Ill. 464; *Standard Oil Co.* v. *Watts,* (7th cir.) 17 F.2d 981), and there remain questions of fact to be decided by a jury. Under these circumstances the proper disposition by the Appellate Court would have been to reverse and remand the case for a new trial. Further, one of the powers given reviewing courts of this State by section 92 of the Civil Practice Act is the power to order a remandment where such action is deemed just and required by the case. (See Ill. Rev. Stat. 1963, chap. 110, par. 92(1)(e); *City of Aurora ex rel. Egan* v. *Y.M.C.A.,* 9 Ill.2d 286.) We believe the ends of justice can best be served by remanding this case for a new trial.

Finally, defendant contends here that the damages awarded to plaintiff Norville were improper (1) because they were not supported by a sufficient foundation and (2) in a joint suit with his landlord the damages of a tenant would be merged in the damages claimed by the landlord.

Plaintiff John Norville was a tenant from year to year under an oral lease. That a tenant may recover damages for injury to his crops caused by a third person is established law. (*Funston* v. *Hoffman*, 232 Ill. 360; *Libbra* v. *Mt. Olive and Staunton Coal Co.* 29 Ill. App.2d 396; 24 ILP, Landlord and Tenant, sec. 261.) In *Funston* v. *Hoffman*, 232 Ill. 360, it was held that a tenant from year to year who at the time of releasing the land, knew that the removal of neighboring drain tile had caused partial flooding of his land in the past, could not recover for flood damages to his crops occurring subsequent to the releasing. The same principle applies here where Norville was aware of standing water or partial flooding due to the sinking of the land in certain areas at the time he re-leased the land from the owner Tankersley. We accordingly agree with the trial court's ruling that such a tenant would be entitled only to such damages as he sustained because of crop damage due to subsidences for the year in which the particular subsidence or subsidences occurred.

Whether the depressions in the Tankersley farm land which lie over the area mined by Peabody are actually subsidences and, if so, whether there are damages owed to plaintiffs because of alleged depreciation in the value of the land and damage to crops are all questions of fact to be decided by the jury.

That portion of the Appellate Court's opinion adhering to the rule in *Buis* v. *Peabody Coal Company*, 41 Ill. App.2d 317, was correct, but its judgment reversing the case outright is reversed and the cause is remanded to the trial court for a new trial in accordance with this opinion.

*Affirmed in part and reversed in part and remanded.*

Mr. JUSTICE HERSHEY took no part in the consideration or decision of this case.