[No. A038279. First Dist., Div. Five. Oct. 28, 1988.]

ROBERT G. PLATTS, Plaintiff and Appellant, v.
SACRAMENTO NORTHERN RAILWAY, Defendant and
Respondent.

## COUNSEL

Lawrence G. Smith and Smith, Etnire, Polson, Scott & Baker for Plaintiff and Appellant.

B. Clyde Hutchinson, James C. Martin, Joseph P. Mascovich, Scott M. Schoenwald and Crosby, Heafey, Roach & May for Defendant and Respondent.

## OPINION

LOW, P. J.—A former owner of an underground tunnel easement who removed subjacent support from the surface land may be liable for property damage to the surface owner even after the owner transfers the property. Plaintiff, however, has failed to produce any declarations or facts to refute

defendant Sacramento Northern Railway's showing that it did not remove any subjacent support. We affirm the summary judgment.

Robert G. Platts sued defendant Sacramento Northern Railway (Northern) and the State of California for the destruction of his house allegedly caused when an abandoned railroad tunnel beneath his property collapsed.[1] Northern was the predecessor in interest and the state was the most recent owner of the land, including the tunnel and the rights of way. He alleged that the railway was absolutely liable for its failure to provide adequate subjacent support. Relying on the recent decision in *Preston* v. *Goldman* (1986) 42 Cal.3d 108 [227 Cal.Rptr. 817, 720 P.2d 476], the trial court granted summary judgment in favor of Northern. Plaintiff appeals, contending (1) the actor who causes the loss of subjacent support is absolutely liable for damages proximately caused thereby and (2) material issues of fact exist to defeat summary judgment. We affirm.

The undisputed facts are as follows: On December 12, 1976, plaintiff purchased an unimproved lot from the State of California in the Oakland Hills on which he planned to build his residence. The chain of title disclosed the existence of an abandoned railroad tunnel which passed underneath the property. The tunnel had been excavated by the Oakland and Antioch Railway (OAR) between 1910 and 1913, pursuant to an easement acquired from the People's Water Company and the Mahogany Eucalyptus and Land Company. In 1920, OAR sold the tunnel easement to the San Francisco-Sacramento Railroad Company (the SFSRR). Eight years later in July 1928, defendant Northern purchased the real and personal property of SFSRR and acquired the tunnel easement. Northern operated its railroad line through this tunnel from 1928 to 1957. Over time, Northern replaced numerous timbers in the tunnel. In 1957, Northern discontinued use of the tunnel. After six months of nonuse, Northern's easement interest in the tunnel reverted to the surface landowner, pursuant to the original grant deed to OAR. On October 8, 1958, Northern quitclaimed any remaining interest in the tunnel easement to the State of California. The state owned and occupied this property until plaintiff's purchase in 1976.

In his opposition, plaintiff claims when he bought the land from the state he was not aware of the tunnel. Five months later, plaintiff applied for a building permit and was informed of the tunnel's existence. Prior to construction, he hired a consulting engineer who informed him that the house should be placed on reinforced grid capable of resisting settlement effects. The engineer also reported that the tunnel appeared to be in "relatively

---

[1] Plaintiff sued the state for inverse condemnation. Only Northern made a motion for summary judgment. The state is not a party to this appeal.

good condition." The report also contained the disclaimer that they could not "guarantee the stability or performance of this or any hillside site."

Plaintiff began construction in August 1977. Four months later, a portion of the land subsided. Plaintiff deposited fill to repair the subsidence and completed construction in May 1978. Four years later, in January 1982, the earth collapsed beneath the house, destroying it. Plaintiff alleged that this was caused by the collapse of a portion of the abandoned tunnel.

Plaintiff argued that Northern breached its common law duty to provide subjacent support for the surface lands which caused plaintiff's house to collapse. In its motion for summary judgment or summary adjudication of issues, Northern argued (1) that it did not excavate the tunnel and therefore it is not liable for the damage, and (2) it did not assume any obligations or liabilities of its predecessor in interest, and (3) it is not liable since it relinquished possession and control to the state more than 20 years before the accident.

I

■ California relies on the rule of law that as to patent defects once a property owner has sold his land he is not liable for injuries caused by the defective conditions which existed on the land at the time of the sale. (See *Preston* v. *Goldman, supra,* 42 Cal.3d at pp. 119, 122-127.) ■ Under the law of subjacent support, California follows the common law rule that the owner of subjacent support is absolutely liable for damages caused to the surface owner by removal of the natural necessary support. (*Marin Mun. Water Dist.* v. *Northwestern Pac. R.R. Co.* (1967) 253 Cal.App.2d 83, 89 [61 Cal.Rptr. 520]; see *Lee* v. *Takao Bldg. Development Co.* (1985) 175 Cal.App.3d 565, 568-569 [220 Cal.Rptr. 782] [removal of lateral support]; Rest.2d Torts, § 820, com. b, p. 79.) The surface owner's cause of action accrues when the land subsides, not when the excavation was made. (*Marin Mun. Water Dist., supra,* at p. 96; Rest.2d Torts, *supra,* § 820, com. f, p. 80.) The right of the surface land to subjacent support is absolute and the actor is liable for damages without regard to negligence. (*Island Creek Coal Co.* v. *Rodgers* (Ky. 1982) 644 S.W.2d 339, 343-344; *Tankersley* v. *Peabody Coal Company* (1964) 31 Ill.2d 496 [202 N.E.2d 498, 502]; Rest.2d Torts, *supra,* § 820, com. b, p. 79.)

No California case has addressed the issue whether the party who removed the subjacent support is free from liability once the property is sold. The restatement notes that transfer of the land to a third person does not relieve the actor of liability or subject the transferee to this liability. (Rest.2d Torts, *supra,* § 820, com. g, p. 80.) "The person liable under the

rule stated in this Subsection is the actor who withdraws the naturally necessary support. It is immaterial whether, in respect to the supporting land, the actor is owner, possessor, licensee or trespasser. The owner or possessor of this land is not liable under the rule stated in this Section unless he was an actor in the withdrawal of support." (*Ibid.*; see *Tankersley* v. *Peabody Coal Company, supra,* 202 N.E.2d at p. 502.) The duty is not enlarged by alterations of the natural conditions, and the actor is not liable for damage to improvements on the surface owner's land if he can prove the land would not have subsided if the improvements were not built. (See *Marin Mun. Water Dist.* v. *Northwestern Pac. R.R. Co., supra,* 253 Cal.App.2d at p. 97; Rest.2d Torts, *supra,* § 820, com. d, pp. 79-80.)

■ ■■■ ■ ■ The widely held rule is that a subsequent purchaser of land is not liable for the negligent removal of *lateral* support caused by the previous owner. (*Lee* v. *Takao Bldg. Development Co., supra,* 175 Cal.App.3d at p. 569; *First Nat. Bank & Trust Co.* v. *Univ. Mortg. & R. Trust.* (1976) 38 Ill.App.3d 345 [347 N.E.2d 198, 199]; Rest.2d Torts, *supra,* § 817, subd. j, p. 69.)[2] The result should be no different for liability for the removal of *subjacent* support. One rationale, common to both torts, is that it is unreasonable to hold the successor in interest liable for a defect it did not know about and for damages it could not possibly prevent. (See *Tankersley* v. *Peabody Coal Company, supra,* 202 N.E.2d at p. 502.) Moreover, there is a strong public policy to fix liability upon those responsible for the damage. Civil Code section 1714 provides that "[e]veryone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person . . . ." (Subd. (a); see also *Lee* v. *Takao Bldg. Development Co., supra,* at pp. 568-569.) The landowner who took possession of the property after the act causing the removal of the surface support is not responsible.

*Preston* v. *Goldman, supra,* relied upon by Northern, is itself a departure to the general rule laid down by Civil Code section 1714, *supra.* The *Preston* court concluded that the duty to take affirmative action to protect individuals coming upon one's land " '*is grounded in the possession of the premises and the attendant right to control and manage the premises.*' [Citation.]" (42 Cal.3d at p. 118.) The reasoning goes that a previous owner should not be

---

[2] Civil Code section 832 has been interpreted to relax the common law rule of absolute liability for the withdrawal of lateral support only. This statute frees the adjoining owner from the common law liability, provided certain notice conditions are met and the negligence of the excavation is not the proximate cause of the damage. This statute has been held *not* to amend the common law rule of absolute liability for the removal of subjacent support. (See *Marin Mun. Water Dist.* v. *Northwestern Pac. R.R. Co., supra,* 253 Cal.App.2d at pp. 94-95.) The statute does not affect the rules imposing liability on the actor who removes the support.

held liable over defective conditions on the premises which he can no longer control or remedy. (*Id.,* at pp. 118-119.)

This analysis which is based on principles of foreseeability, due care and negligence has no application to the absolute right of the surface owner to subjacent support. (See *Marin Mun. Water Dist.* v. *Northwestern Pac. R.R. Co., supra,* 253 Cal.App.2d at p. 89.) For this reason, the case relied upon by defendant, *Preston,* is inapplicable. ■ The right to subjacent support is incident to the surface land and that right is not enlarged or amended by transfer of ownership. (See Rest.2d Torts, *supra,* § 820, com. g, p. 80; also *First Nat. Bank and Trust Co., supra,* 347 N.E.2d at p. 200 [removal of lateral support].) That duty is not altered by the use to which the surface owner puts his land or whom he allows upon it. In a strict sense, the damage to the surface land from the removal of subjacent support occurs at the time of the excavation, although the cause of action does not accrue until subsidence. (*Marin Mun. Water Dist., supra,* at p. 96.) This differs markedly from the negligence analysis employed in *Preston.* There, the duty is to use reasonable care to protect visitors from injury due to patently defective conditions. The defective pond in *Preston* was just as noticeable to the present owner as to the person who constructed it. The duty to use due care is imposed on the landowner because he controls and supervises the premises and can make the necessary repairs. By transferring the property, the grantor has relinquished all control over it, and cannot dictate who should be permitted on the premises nor can he enter the premises to effect repairs even if he wanted to. (See *Preston* v. *Goldman, supra,* 42 Cal.3d at pp. 118-119; *Copfer* v. *Golden* (1955) 135 Cal.App.2d 623, 630-634 [288 P.2d 90].) These factors are not present in cases of removal of support for the surface land.

■ We conclude that the party who removes the subjacent support is absolutely liable for damages caused by subsidence. Therefore the transfer of the property to the state did not necessarily relieve Northern from liability. The issue of causation was the subject of Northern's motion for summary judgment, which we discuss below.

II

In support of its summary judgment motion, Northern submitted the affidavit of one of its engineers who reviewed records of the maintenance and stated that the replacement of the timbers did not contribute to the withdrawal of subjacent support, but that this maintenance actually strengthened the tunnel supports. Plaintiff supplied no declaration from a qualified expert contradicting any of the opinions set forth above.

■ "A defendant moving for summary judgment must conclusively negate a necessary element of the plaintiff's case or establish a complete defense and thereby demonstrate that under no hypothesis is there a material factual issue which requires the process of a trial. (*Vanderbilt Growth Fund, Inc.* v. *Superior Court* (1980) 105 Cal.App.3d 628, 633-634 [164 Cal.Rptr. 621].) ■ 'Under well established rules governing summary judgment motions, the affidavits of the moving party are to be strictly construed and those of the opponent liberally construed. [Citations.] Nevertheless, a party opposing a motion for summary judgment which is supported by affidavits or declarations sufficient to sustain the motion, has the burden of showing that triable issues of fact exist.' (*Chern* v. *Bank of America* [(1976)] 15 Cal.3d 866, 873 [127 Cal.Rptr. 110, 544 P.2d 1310].) If he does not sustain that burden summary judgment is proper. (See *Terry* v. *Atlantic Richfield Co.* (1977) 72 Cal.App.3d 962, 971 [140 Cal.Rptr. 510]; *Keene* v. *Wiggins* (1977) 69 Cal.App.3d 308, 311 [138 Cal.Rptr. 3].)" (*Saatzer* v. *Smith* (1981) 122 Cal.App.3d 512, 517 [176 Cal.Rptr. 68].)

■ Northern's declaration negates the element of causation. The expert opinion of Northern's engineer negating the element of causation is sufficient to support a motion for summary judgment. (See *Chatman* v. *Alameda County Flood Control etc. Dist.* (1986) 183 Cal.App.3d 424, 429 [228 Cal.Rptr. 257]; *Wynner* v. *Buxton* (1979) 97 Cal.App.3d 166, 172-173 [158 Cal.Rptr. 587].) Plaintiff's declaration contains no facts refuting this conclusion which would require the weighing process of a trial. On this record, there is no triable issue of fact and Northern is entitled to summary judgment as a matter of law. The summary judgment is affirmed.

King, J., and Haning, J., concurred.