MBA ENTERPRISES, INC., d/b/a Ramada Inn, *et al.*, Plaintiffs-Appellants, v. NORTHERN ILLINOIS GAS COMPANY, Defendant-Appellee.

Third District   No. 3—98—0305

Opinion filed August 31, 1999.

KOEHLER, J., specially concurring in part and dissenting in part.

Christopher W. Bohlen, of Barmann, Kramer & Bohlen, P.C., of Kankakee, and John F. Brown, Jr. (argued) and Paul R. Bartolacci, both of Cozen & O'Connor, of Philadelphia, Pennsylvania, for appellants.

George J. Tzanetopolous (argued) and Robert M. Dow, Jr., both of Mayer, Brown & Platt, of Chicago, for appellee.

JUSTICE BRESLIN delivered the opinion of the court:

Plaintiffs MBA Enterprises (MBA), d/b/a the Ramada Inn, and Northern Insurance Company filed suit against Northern Illinois Gas Company (NI Gas) to recover property damages in excess of $2 million

caused by a gas explosion and fire at the Ramada Inn in Bradley, Illinois. The trial court granted NI Gas's motion for summary judgment based on the construction statute of repose of the Code of Civil Procedure (Code) (735 ILCS 5/13—214(b) (West 1996)) because MBA failed to commence the suit within 10 years of construction of the gas piping system. We find that, while the plaintiffs' claims regarding design and installation of the system are time-barred, their remaining allegations concerning the continued use of and sale of gas through the defective system survive. Accordingly, we affirm in part, reverse in part and remand.

## BACKGROUND

NI Gas constructed and installed a gas piping system on the premises of the Ramada Inn in 1961. A stopper nipple assembly pipe was installed in the system as a bypass. The pipe served to connect a testing valve to the main supply pipe. The connection enabled NI Gas employees to inspect and service the gas piping system without disabling the system and interrupting business at the hotel. After installing the piping, NI Gas continued to use the stopper nipple and gas piping system to operate, sell and supply gas to Ramada Inn until the explosion in 1994.

MBA Enterprises acquired the Ramada Inn premises in 1992. In July of 1993, a NI Gas service technician performed an annual meter inspection and regulator overhaul on the Ramada Inn system. Approximately six months later, a Ramada Inn employee was changing the position of a louver which controlled entry of air into the boiler room where the gas system was located. When he heard a loud escape of gas from the system he immediately exited the room. The gas leakage caused an explosion and subsequent fire, severely damaging the Ramada Inn. The explosion was attributed to a fracture in the stopper nipple pipe. MBA, along with its insurer, filed suit against NI Gas alleging negligence, strict liability, breach of warranty of merchantability and breach of warranty of fitness. The breach of warranty claims were dismissed at the initial stages of the pleadings.

In preparation for trial, the plaintiffs retained two opinion witnesses. In their depositions, the witnesses stated that the gas leak was due to the failure of the stopper nipple used in the system. Both witnesses opined that during the assembly of the gas piping system, the stopper nipple was welded to the main pipe. A hole was then drilled with a power tool through the nipple and into the wall of the main pipe. Upon examination of the fractured pipe, it appeared that during the drilling procedure some of the wall of the nipple was abraded away by the installer drilling an off-centered hole. In addition, the particu-

lar stopper nipple utilized had both internal and external threads without the required plug and cap components. The witnesses deposed that the internal threads were unnecessary and weakened the wall of the stopper nipple.

In their complaint, the plaintiffs alleged that the explosion and resulting damage were due to NI Gas's negligent fabrication, installation, assembly, design, maintenance and supply of gas through a system containing a defective stopper nipple. Paragraph 15 included several allegations of defective design and installation of the system. However, subsection (c) stated that NI Gas was negligent for continuing to operate, sell and supply gas through the defective gas system without proper maintenance, inspection and testing to evaluate the integrity of the system. NI Gas moved for summary judgment on all negligence and strict liability claims, insisting that it was immune from liability under the construction statute of repose. The trial court granted the motion and the plaintiffs appeal.

## DISCUSSION

The sole issue on appeal is whether the plaintiffs' entire complaint alleging negligent design and installation of the piping system, as well as negligent maintenance, sale and supply of gas through the defective system, is barred by section 13—214(b) of the Code (construction statute of repose).

■ The construction statute of repose provides:

"No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission." 735 ILCS 5/13—214(b) (West 1996).

Section 13—214(b) applies when: (1) the item at issue is an improvement to real property; and (2) the defendant's actions fall within the scope of the activities enumerated in the statute. *Adcock v. Montgomery Elevator Co.*, 274 Ill. App. 3d 519, 654 N.E.2d 631 (1995). The statute protects anyone, regardless of status, if that party's engagement in an enumerated construction-related activity is the sole basis of a particular claim. *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.*, 114 Ill. 2d 252, 500 N.E.2d 34 (1986). However, acts unrelated to the initial construction of the improvement, such as the sale and distribution of improvements to real property, are not protected by the statute. *Krueger v. A.P. Green Refractories Co.*, 283 Ill. App. 3d 300, 669 N.E.2d 947 (1996). We review an order granting summary judgment *de novo*. *Armstrong v. Washington*, 289 Ill. App. 3d 306, 682 N.E.2d 761 (1997).

The plaintiffs maintain that their theory that NI Gas was negligent for continuing to use, maintain and sell gas through the defective piping system does not fall within the scope of the statute. In response, NI Gas claims that the defect in the construction of the gas piping system is at the core of all claims advanced by the plaintiffs; thus, section 13—214(b) bars their suit.

■ The construction statute of repose was enacted for the express purpose of insulating all participants in the construction process from the onerous task of defending against stale claims. See generally W. Martorelli, *State Statutes of Repose and Government Claims for Latent Defects in Design and Construction*, 25 Pub. Cont. L.J. 199 (1996). The plain language of section 13—214(b) reflects that purpose but bars only those claims regarding the construction of an improvement to real property. 735 ILCS 5/13—214(b) (West 1996); *Krueger*, 283 Ill. App. 3d at 304, 669 N.E.2d at 950.

■ The plaintiffs' complaint alleges a number of negligent acts by NI Gas that clearly fall within the purview of installation and construction of the piping system. However, while not artfully drafted, the complaint also alleges that NI Gas negligently continued to operate and maintain the system and continued to use the defective system to sell and supply gas to the Ramada Inn. Such claims of negligence are based on the theory that the gas company owed MBA an ongoing duty of care to operate and maintain the gas system in a safe manner. *Metz v. Central Illinois Electric & Gas Co.*, 32 Ill. 2d 446, 207 N.E.2d 305 (1965) (those who furnish gas must exercise a degree of care commensurate to the danger of supplying gas and use precaution to prevent injury). Consequently, these claims survive apart from the plaintiffs' claims related to the initial construction of the system. See *Krueger*, 283 Ill. App. 3d at 304, 669 N.E.2d at 950 (section 13—214(b) applies to activity of installing asbestos but not to related sales and distribution of asbestos claims); see also *State Farm Mutual Automobile Insurance Co. v. W.R. Grace & Co.*, 834 F. Supp. 1052 (C.D. Ill. 1993) (protection afforded from section 13—214(b) for construction-related activities but not for manufacturing-related acts). We therefore reverse the trial court's dismissal of this portion of the plaintiffs' complaint.

In rebuttal, NI Gas principally relies on *O'Brien v. City of Chicago*, 285 Ill. App. 3d 864, 674 N.E.2d 927 (1996), to support its argument that the crux of plaintiffs' claims is a defect in the design or construction of the improvement; therefore, the statute of repose bars all theories of the case. To the extent that *O'Brien* holds that the statute of repose bars any cause of action for negligence that may arise after the construction or installation of an improvement when the underlying

claim is a defective design or construction claim, we decline to follow that case.

Instead, we reiterate our position in *Krueger v. A.P. Green Refractories Co.*, 283 Ill. App. 3d 300, 669 N.E.2d 947 (1996). The plaintiff in *Krueger* alleged that the defendant negligently engaged in the business of installing, selling and distributing asbestos. In holding that section 13—214(b) only applies to claims arising out of construction-related activities undertaken by the defendant, we found that the plaintiff's claims regarding the sale of a defective product were not time-barred. *Krueger*, 283 Ill. App. 3d at 304, 669 N.E.2d at 950.

NI Gas insists that the great weight of Illinois authority compels us to hold that if the crux of the claim is a defect in the design or construction of the improvement, the construction statute of repose applies to all claims asserted. It relies on *VonHoldt v. Barba & Barba Construction, Inc.*, 175 Ill. 2d 426, 677 N.E.2d 836 (1997), *Zielinski v. Miller*, 277 Ill. App. 3d 735, 660 N.E.2d 1289 (1995), and *Cates v. Hunter Engineering Co.*, 205 Ill. App. 3d 587, 563 N.E.2d 1239 (1990). However, close scrutiny of these cases reveals their inapplicability to the issue at hand.

In *VonHoldt*, the court held that a subsequent purchaser had a cause of action for damages resulting from a breach of implied warranty of habitability caused in the construction of the bathroom of a residence. But the court concluded that the plaintiff's cause of action was time-barred under section 13—214(b) because it was a construction-related claim. Notably, additional claims for failure to maintain the improvement were not raised by the plaintiff's complaint or discussed by the court. *VonHoldt*, 175 Ill. 2d at 433-35, 677 N.E.2d at 840-41.

Further, the court in *Zielinski* considered the applicability of two statute of limitations periods. In that case, homeowners brought an action against their contractor for faulty bricks. The contractor filed a third-party complaint against the brick supplier and installer which was dismissed. On review, the court affirmed the dismissal based upon the statute of limitations periods in section 13—214(a) of the Code and section 2—725 of the Uniform Commercial Code (810 ILCS 5/2—725 (West 1994)), not the construction statute of repose. *Zielinski*, 277 Ill. App. 3d at 741-43, 660 N.E.2d at 1294-95.

Finally, the question decided on appeal in *Cates* was whether the defendant met its burden of establishing that a cold rolling mill was an improvement to real property. The second prong of the statute of repose, whether the activities alleged fell within the scope of the statute, was not considered. *Cates*, 205 Ill. App. 3d at 588-89, 563 N.E.2d at 1241.

Accordingly, we affirm the trial court's award of summary judgment as to those theories alleging liability for the construction, installation, fabrication and design of the defective pipe. But we reverse and remand for further proceedings on the claims of negligence and strict liability due to the continued use, maintenance and sale of gas through the piping system.

For the foregoing reasons, the judgment of the circuit court of Kankakee County is affirmed in part, reversed in part and remanded to the trial court for further proceedings consistent with the opinions expressed herein.

Affirmed in part and reversed in part; cause remanded.

HOMER, J., concurs.

JUSTICE KOEHLER, specially concurring in part and dissenting in part:

In passing the statute of repose, our legislature embraced section 13—214(b), Illinois' construction statute of repose, which bars a cause of action before it arises. Section 13—214(b) is part of a comprehensive limitations scheme that was enacted in 1979 for the benefit of parties associated with construction activities on real property, to protect them from frivolous law suits because of judicial decisions that, in effect, had subjected them to liability in perpetuity. See *C.S. Johnson Co. v. Champaign National Bank*, 126 Ill. App. 3d 508, 510-11, 467 N.E.2d 363, 365 (1984) (quoting transcript of House and Senate debate on section 13—214). Accordingly, I cannot sign on to the reimposition of such a burden.

As I read today's opinion, this court has articulated a new duty on gas suppliers as a matter of law: to check, recheck, and recheck again to make sure that, when a piping system through which it sells gas was initially constructed and installed, it was not done in a negligent fashion.

As set forth in the majority opinion, the plaintiffs produced two opinion witnesses who testified that the gas leak at issue was due to the failure of the stopper nipple used in the system. Both witnesses expounded that this failure was the result of a hole in the stopper nipple, which was poorly drilled during the assembly of the piping system. They also criticized the use of a nipple with internal threads, the choice of which was obviously made before or during assembly.

That these criticisms are directed exclusively to the construction, installation, fabrication, and design of the piping system seems apparent. It would further seem to follow that these opinions would be of

little avail to the plaintiffs because the defendants are statutorily immune from suits for any such negligence due to the passage of time. Indeed, the majority correctly affirms the circuit court's order granting summary judgment as to those theories alleging liability for the construction, installation, fabrication, and design of the defective pipe. As such, I join the majority opinion to the extent that it affirms the circuit court.

I cannot agree, however, with the majority's conclusion that the plaintiffs have stated a cause of action falling outside the statute of repose for negligent operation and maintenance of the system. When stated simply, the theory is that because NI Gas continued to supply gas to be used with the system, it failed to notice or remedy the poorly drilled hole or the use of a nipple with internal threads. In other words, it failed to check, recheck, and recheck again the system for negligent construction, installation, fabrication, or design.

The logic of imposing this duty escapes me. In theory, I imagine, it would make systems marginally safer by mandating continuous double-checking to make sure that the original construction was done properly. I say ''marginally safer'' because most systems are not installed negligently, and those that are negligently installed are generally noticed within the 10-year statute of repose. Thus, even in theory, such double-checking would not likely reveal many new discoveries.

However, the reality of today's decision is that it will have one of two potential effects. One effect might be that entities that install gas piping will decline to supply gas. Had NI Gas so declined to supply gas, it would not be a defendant today, even though all of the complained-of acts would still have been committed. By creating a dichotomy of constructors and gas suppliers, the benefits of the statute of repose would be realized.

The second potential effect of today's imposed duty will be to unnecessarily drive up the cost of supplying gas. Taking plaintiffs' criticisms of the system at face value, NI Gas should have inspected the system every time it supplied gas for the quality of the installation drilling and whether any of the parts used internal threads. One might imagine a whole host of other potential criticisms of the construction or design that might be levied by an opinion witness at a later date, for which NI Gas would also have to check. Today's duty takes the simple act of supplying gas and conforms it to a major operation.

The very real effect of today's decision, and perhaps the most important effect, is that the majority has written out the protections that the legislature provided in the statute of repose. Again, the plaintiffs' opinion witnesses offered criticisms directed exclusively to-

ward the initial construction, installation, fabrication, and design. Even the plaintiffs' experts agree that there was nothing negligent about NI Gas' act of supplying gas over the past 30-plus years except for its failure to double-check the initial work. By imposing this continuing duty to double-check, NI Gas can never receive the protection intended by the statute of repose.

I might be more willing to consider a judicially declared duty had the plaintiffs offered someone from the field to articulate the nature and extent of industry standards with regard to the installation of gas piping and the subsequent supplying of gas. In the field of medicine, doctors are bound to comply with the standard of care, which medical experts familiar with the applicable standard define on a case-by-case basis. Similarly, had plaintiffs countered the motion for summary judgment with an opinion witness who testified that double-checking the construction of gas piping is commonplace or that such double-checking is not burdensome or that such double-checking would be inexpensive and easy or that such double-checking would provide a specific positive benefit to the field or to society as a whole, this court would be in a better position to pronounce and tailor any duty to double-check. As it is now, we do not know the ramifications of the duty that we now impose or the need for imposing it or any likely benefits of imposing it.

Because I would not require NI Gas to defend the construction and installation of a piping system that occurred over 30 years ago, I would affirm the circuit court's order granting summary judgment. Accordingly, I respectfully dissent from the portion of today's opinion that reverses the circuit court's order.