CUDAHY, Circuit Judge,
concurring.
I am pleased to join the excellent majority opinion and particularly its important outcome. The issue resolved here is of more than passing significance because, for all practical purposes, an opposite result would slam the door almost completely on claims for coal mine subsidence in Illinois. Coal mine subsidence is usually a long-term proposition. The subsidence alleged in this case took place forty years after operations at the St. Ellen mine had ceased. See also Tankersley v. Peabody Coal Co., 31 Ill.2d 496, 202 N.E.2d 498 (1964) (forty years); Nida v. American Rock Crusher Co., 253 Kan. 230, 855 P.2d 81 (1993) (thirty years). The application of a ten-year statute of repose would block recovery for subsidence damage in all but the rare case where collapse follows promptly upon excavation. This would be good news for coal mining companies and bad news for the neighbors of their mines. *787 With an opposite result here, the Illinois Mine Subsidence Insurance Fund might as well go out of business.
Illinois has had a construction statute of repose since 1979. See 735 ILCS 5/13— 214(b) (2007). Nearly every state in the nation now has a construction statute of repose; many of these statutes contain wording that is similar to the Illinois statute. Yet no court in the nation has ever held that digging a coal mine was an act of “construction” or an “improvement to real property” or anything analogous to those statutory requirements.[1] As far as I can tell, no defendant has even argued that a construction statute of repose applied to mining operations — not even in the leading mining jurisdictions of Pennsylvania and West Virginia. It would surely be an ill-starred innovation here to find that what is essentially digging a hole in the ground is an act of “construction of an improvement to real property” controlled by the statute of repose.
I.
The parties here raised at length, and the majority opinion contains an extended discussion of, the term “improvement to real property,” which although relevant is really not central to the present issue. The extraction of the coal is the legal cause of the injury here,[2] and this fact should govern our interpretation of the statute of repose. To benefit from the statute, Peabody must show that Ambrosia’s mine subsidence claim (which results from coal removal) arises out of a construction-related activity. See, e.g., King v. Paul J. Krez Co., 323 Ill.App.3d 532, 538-39, 256 Ill.Dec. 725, 752 N.E.2d 605 (2001); MBA Enterprises, Inc. v. Northern Illinois Gas Co., 307 Ill.App.3d 285, 288, 240 Ill.Dec. 500, 717 N.E.2d 849 (1999); Krueger v. A.P. Green Refractories Co., 283 Ill.App.3d 300, 304, 218 Ill.Dec. 626, 669 N.E.2d 947 (1996). The requirement of a nexus between the legal claim and the construction-related activity is not simply a judicial gloss; the Illinois statute of repose applies only to an “action ... for an act or omission ... of construction.” 735 ILCS 5/13 — 214(b) (emphasis added). If the construction-related activity is the sole basis of the legal claim, the statute bars the claim. See MBA Enterprises, 307 Ill.App.3d at 288, 240 Ill.Dec. 500, 717 N.E.2d 849. If, however, the legal claim is, as here, based on activities unrelated to the construction, the statute does not apply. Id.
The purpose of the “improvement to real property” language in the statute is to limit the type of “construction” that the statute contemplates. Thus “construction” is anterior to “improvement”; there must be “construction” before its object, “improvement to real property,” is in issue. By referring to “improvement to real property,” the statute distinguishes between construction involving personal property (not covered) and construction of an improvement to real property (covered). But, before the nature of an improvement to real property is an issue, there must be “construction” to create it.
*788 The rule that the legal claim must be based on construction-related activity has an important corollary, one that is dispositive in this case. Illinois courts have been clear, as is the majority opinion, that the statute does not bar claims made against a landowner solely in his or her capacity as landowner, as in subsidence claims. See Continental Ins. Co. v. Walsh Const. Co. of Illinois, 171 Ill.App.3d 135, 139, 121 Ill.Dec. 83, 524 N.E.2d 1131 (1988); C.S. Johnson Co. v. Champaign Nat. Bank, 126 Ill.App.3d 508, 511, 81 Ill.Dec. 663, 467 N.E.2d 363 (1984). One defining characteristic of a suit against a landowner qua landowner is that it proceeds on a theory of strict liability as distinguished from a theory of negligence.
Although one may think erroneously of subsidence claims as involving negligence, such suits are actually merely actions for the withdrawal of subjacent support. See Lloyd v. Catlin Coal Co., 210 Ill. 460, 468, 71 N.E. 335 (1904); Restatement (Second) of ToRts, § 820(1) (1979). The degree of care used in the withdrawal of support is completely irrelevant; as soon as the owner of a mineral estate withdraws any natural support from the surface estate, it becomes subject to liability for such a withdrawal. See Standard Oil Co. v. Watts, 17 F.2d 981, 982 (7th Cir.1927) (applying Illinois law). It is the extraction of coal to create a hole or a void (or a “room”) that creates the potential for subsidence and damage. When subsidence occurs, the action is complete and the owner of the mineral estate becomes liable without regard to negligence. See Restatement (Second) of ToRts, § 820(1) cmt.g (1979). If the owner of the mineral estate does not wish to be subject to this ongoing liability, it has only two options: “Furnish[] artificial support sufficient to replace the natural support withdrawn” or pray that there is no subsidence. Id. This is all well settled. See Wilms v. Jess, 94 Ill. 464 (1880); Buis v. Peabody Coal Co., 41 Ill.App.2d 317, 190 N.E.2d 507 (1963); Wanless v. Peabody Coal Co., 294 Ill.App. 401, 13 N.E.2d 996 (1938); Treece v. Southern Gem Coal Co., 245 Ill.App. 113 (1923).
With this proper backdrop in place, it becomes clear that Ambrosia’s mine subsidence claim is based on something other than activity related to construction. Peabody decided to extract coal from below the Ambrosia property. It does not claim that it secured a waiver of Ambrosia’s right to subjacent support. Under Illinois law, Peabody becomes subject to liability as soon as any natural support for Ambrosia’s land is removed. Thus, when Peabody removed its first shovelful of coal, it became subject to liability in the event of a mine subsidence. See Watts, 17 F.2d at 982. When the subsidence occurred in 2000, Ambrosia sued Peabody in its capacity as the owner of the mineral estate at the time of the withdrawal of support. This is entirely appropriate under Illinois law. See Buis, 41 Ill.App.2d at 323, 190 N.E.2d 507. Further, it is clear that this is a suit between owners solely as owners; the statute of repose, therefore, does not apply. See C.S. Johnson Co., 126 Ill.App.3d at 511, 81 Ill.Dec. 663, 467 N.E.2d 363.
II.
A room and pillar mine is essentially a hole — an incomplete hole because pillars are left in place to prevent subsidence. One could not argue that the hole (or the “room”) has been “constructed”; it is simply the void left after the coal is removed. The pillars are not constructed either; they are simply coal that has been left behind. Even if we were to consider the overall design of the mine, it is simply the absence of the coal that caused the damage, and the effectuation of its removal is not construction. Thus, Peabody has no *789 evidence that it “constructed” anything that caused the subsidence. Even the creation of the pillars, if that were considered “construction,” is not relevant since that is certainly not the cause of the subsidence. As has been noted, it is the legal cause of the injury which must meet the requirements of the statute of repose.
Although the matter is not central, Peabody has also not shown that there was an “improvement to real property” here. An improvement implies some kind of addition. See Calumet Country Club v. Roberts Environmental Control Corp., 136 Ill.App.3d 610, 613, 91 Ill.Dec. 267, 483 N.E.2d 613 (1985). Peabody has argued the factors defining an improvement as set forth in St. Louis v. Rockwell Graphic Systems, Inc., 153 Ill.2d 1, 178 Ill.Dec. 761, 605 N.E.2d 555 (1992). The application of these factors, however, assumes that an “addition” has occurred or been found. Id. at 4, 178 Ill.Dec. 761, 605 N.E.2d 555. Peabody has stressed that the pillars served an important purpose because they supported the ceiling of the mine. But the pillars merely “replace” the support provided by the preexisting coal or, more literally, merely form a portion of the preexisting coal, the remainder of which has been removed. The pillars of unmined coal are certainly not an addition. Once the coal is removed, the pillars must support both the surface above them and the surface above the newly created rooms. The pillars are nothing more than a partial replacement for the support that has been removed. Replacement, however, is not improvement. See Calumet, 136 Ill.App.3d at 613, 91 Ill.Dec. 267, 483 N.E.2d 613.
III.
Applying the statute of repose in this case does nothing to further its purpose. Statutes of repose are intended to protect against stale claims. See Wright v. Board of Educ. of City of Chicago, 335 Ill.App.3d 948, 955-56, 269 Ill.Dec. 589, 781 N.E.2d 386 (2002). Peabody argues that this case presents “the very problem the Statute of Repose seeks to avoid” because “the task of locating living witnesses and pertinent documents is virtually impossible.” Appellee Br.ll. This argument represents a fundamental misunderstanding of Illinois mine subsidence law. Ambrosia is under no obligation to show that Peabody breached a duty of care, and any showing by Peabody that it used due care is irrelevant. Put simply, Peabody’s actions from 1957 to 1960 are not at issue in this case. Peabody already admits that it extracted coal during that period, thus Peabody is already subject to liability for a subsidence. Peabody’s only available defenses are that there was, in fact, no subsidence, or that some other force caused the subsidence. See Watts, 17 F.2d at 982. Both of those inquiries are related to the here and now — that is, both relate to the subsidence event that is alleged to have occurred on Ambrosia’s property in 2000.
IV.
I therefore agree with the conclusion reached by the majority and, in general, with its analysis, with emphasis on the matters I have discussed. And I would reiterate my belief in the importance of this issue and its proper resolution.

. Actually, Peabody made the same argument in another recent case involving subsidence damage over the St. Ellen mine. See Illinois Mine Subsidence Fund v. Peabody Coal Co., 383 F.Supp.2d 1078 (C.D.Ill.2005). Peabody prevailed in that case and, not surprisingly, has asked us to apply the rule of res judicata. I would decline to do so, as the majority apparently has, since the application of res judicata in this case would foreclose an important opportunity to reconsider a legal rule of great general concern. See Chicago Truck Drivers, Helpers and Warehouse Union (Independent) Pension Fund v. Century Motor Freight, Inc., 125 F.3d 526, 531 (7th Cir. 1997).

. Installing lights and other equipment incidental to mining does not cause subsidence.